UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


DALE EDWARD JONES,

      Petitioner,

v.                                 Case No. 8:04-cv-1930-T-24MSS

SECRETARY, Department of Corrections,

      Respondent.

_____/


### O R D E R

      Jones petitions for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 10) and challenges his convictions for lewd and lascivious conduct.  Jones alleges numerous claims of trial court error and denial of effective assistance of trial counsel.  Numerous exhibits ("Respondent's Exhibit __") support the response (Doc. 13).

      Jones was charged by two separate informations (Case Nos. 95-1675F and 95-1693F) with seven counts of committing a lewd act with a child under the age of sixteen and two counts of forcing or enticing a child under sixteen years of age to commit a lewd, lascivious, or indecent act.[1]  A jury convicted Jones of eight[2] of the counts and the trial court sentenced him to forty-five years' imprisonment.  Jones unsuccessfully challenged his convictions and sentences on direct appeal (Respondent's Exhibit 3), in a state petition for a writ of habeas corpus (Respondent's

---

[1]  The trial court granted Jones's motion to consolidate the two informations.

[2]  The jury acquitted Jones of Count III in Case No. 95-1693 (Respondent's Exhibit 1A at 137).

Exhibit 4), in two state Rule 3.850 motions for post-conviction relief (Respondent's

Exhibit 6A, 8), and a state Rule 3.800 motion to correct an illegal sentence

(Respondent's Exhibit 9).  Jones's Section 2254 petition followed.[3]

## STANDARD OF REVIEW

Because this action commenced after April 24, 1996, Section 2254(d), as

amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

governs this proceeding.  Wilcox v. Florida Dep't of Corrections, 158 F.3d 1209, 1210

(11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of state court adjudications, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law,
> > as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of the
> > evidence presented in the State court proceeding.

In Jones v. Taylor, 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted

this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal
> habeas court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state court.

---

[3]  Jones previously filed a federal habeas petition in Case No. 8:03-cv-2082-T-23MAP, which
was dismissed (Respondent's Exhibit 10) without prejudice as premature because the petition
contained both exhausted and unexhausted claims.

Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 694 (2002); Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide.").

The state appellate court affirmed Jones's convictions and sentences on direct appeal in a per curiam decision without a written opinion (Respondent's Exhibit 3), and affirmed the denial of each of his subsequent Rule 3.850 motions for post-conviction relief on appeal in two per curiam decisions without written opinion (Respondent's Exhibits 7, 8).  The state appellate court's per curiam affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir.), reh'g and reh'g en banc denied, 278 F.3d 1245 (2002), cert. denied sub nom Wright v. Crosby, 538 U.S. 906 (2003).

Jones bears the burden of overcoming a state court factual determination by clear and convincing evidence.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies only to a finding of fact, not a mixed determination of law and fact.  Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001).  Consequently, a presumption of correctness attaches to the finding of fact in the trial court's rejection of Jones's post-conviction claims.

## **FACTS**[4]

Jones was charged with the commission of various lewd and lascivious acts upon two minor victims, "T.B." and "C.C.."  T.B. was twelve years old at the time of these offenses.  Jones had lived with T.B. and her mother for a brief time.  T.B. began having trouble getting along with her mother and moved in with Peggy Kimble ("Kimble").[5]  Kimble brought T.B. to Jones's trailer numerous times.  On one occasion, Jones photographed T.B. and Kimble posing as if performing oral sex upon each other.  Jones and Kimble engaged in intercourse and told T.B. they would kill her if she left the room.  Jones forced T.B. to perform oral sex on him on multiple occasions.

C.C. was fifteen years old at the time of these offenses.  She was an acquaintance of T.B.'s and spent the night with T.B. at Kimble's house.  While there,

---

[4] This summary of facts derives from Jones's brief on direct appeal (Respondent's Exhibit 3).

[5] Kimble also faced charges related to her actions against the victims and pleaded guilty pursuant to a plea agreement.

Kimble told C.C. to remove her clothes and Kimble took nude photos of her.  Kimble told

C.C. that "big people" would kill C.C. if she did not comply with Kimble's request.  After

Kimble took the photos, C.C. asked Kimble to take her home.  Kimble agreed but took

C.C. to Jones's trailer instead.  Kimble and Jones took C.C. shopping and Jones

purchased clothes for C.C..  Upon their return to Jones's trailer, Jones attempted to kiss

and fondle C.C..  Kimble ordered C.C. into the bedroom and ordered her to remove her

clothes.  Jones entered the bedroom and fondled C.C.'s breasts, inserted his finger into

her vagina, placed his penis in her mouth and photographed C.C. and Kimble simulating

oral sex upon each other.  Kimble also held C.C. down while Jones performed oral sex

upon C.C..  The next day, C.C. told her grandparents what had happened and C.C.'s

grandfather called police.

### TRIAL COURT ERROR

**Ground One**

Jones contends that the trial court erred in failing to grant a mistrial after the

prosecutor commented in closing argument on Jones's failure to testify.  Jones

complains of the following comment:

> And I think the most important phraseology there is a speculative doubt,
> because in order to buy into this incredible theory not supported by any
> evidence that the Defendant is putting forth as his defense, you would just
> have to speculate all over the place.

(Respondent's Exhibit 2D at 588).  The state appellate court rejected this claim on direct

appeal (Respondent's Exhibit 3).[6]

_____

[6] Jones failed to argue a violation of a federal constitutional right to the state court on direct
appeal.  Consequently, he deprived the state courts of a "full and fair opportunity to resolve any
constitutional issues by invoking one complete round of the State's established appellate review

(continued...)

In Florida, "wide latitude is permitted in arguing to a jury." <u>Breedlove v. State</u>, 413 So.2d 1, 8 (Fla. 1982).  A prosecutor cannot comment on the accused's silence at trial and cannot ask the jury to draw adverse inferences from that silence.  <u>United States v. Robinson</u>, 485 U.S. 25, 32 (1988); <u>Griffin v. California</u>, 380 U.S. 609, 615 (1965).  A prosecutorial remark is improper if it is "manifestly intended" as a comment on the defendant's silence or if the remark "would naturally and necessarily be understood by the jury" as a comment on the defendant's silence.  <u>Matire v. Wainwright</u>, 811 F.2d 1430, 1435 (11th Cir. 1987).  An improper prosecutorial remark amounts to a constitutional violation only if the remark renders the proceedings fundamentally unfair.  <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1379 (11th Cir. 1997).  The relevant inquiry is whether the remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974).  "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (<u>quoting</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. at 642).  In making this assessment, a reviewing court must evaluate an allegedly

_____

[6](...continued)

process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).  A federal court cannot grant a Section 2254 petition unless the petitioner has exhausted every available state court remedy.  <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998).  Jones's exclusively state-law arguments presented on direct appeal leave the federal constitutional claim unexhausted, precluding federal review.  <u>Duncan v. Henry</u>, 513 U.S. at 365.  <u>See also</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

However, the respondent expressly waived the exhaustion requirement as follows: "The Respondent agrees that the claims advanced here have been raised by Petitioner in his direct appeal and his various Motions seeking Post-Conviction Relief, and because of this, his State remedies appear to have been exhausted" (Doc. 13 at 11).  This waiver necessitates review on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(3).

improper comment in the context of both the prosecutor's entire closing argument and the trial as a whole.[7]  Branch v. Estelle, 631 F.2d 1229, 1233 (5th Cir. 1980).[8]

The record shows that defense counsel objected to the prosecutor's comment during the State's closing argument,[9] arguing that the prosecutor was "commenting . . . shifting the burden, coming close to commenting that the Defendant didn't testify . . . ." (Respondent's Exhibit 2D at 588).  Defense counsel moved for a mistrial, which motion the trial court denied.

Viewing the comment in the context of the prosecutor's closing argument, the comment was not an impermissible comment on Jones's decision not to testify.  Rather, the comment made reference to defense counsel's recitation of the jury instruction on reasonable doubt during Jones's closing argument.[10]  Taken in the context of the entire

---

[7]  Florida law is the same as Federal law on closing argument.  To determine whether a prosecutor's remarks are harmful, "the comments must be analyzed within the context of the closing argument as a whole and considered cumulatively within the context of the entire record."  Rivera v. State, 840 So.2d 284, 287 (Fla. 5th DCA 2003) (citing Brooks v. State, 762 So.2d 879 (Fla. 2000); Cochran v. State, 711 So.2d 1159 (Fla. 4th DCA 1998)).

[8]  Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court.  Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

[9]  The trial court advised the jury at the beginning of closing arguments that what the attorneys said was not evidence and the jury should not consider it as such.  (Respondent's Exhibit 2D at 566).

[10]  Specifically, the prosecutor argued the following:

[Defense counsel] did read the reasonable doubt instruction to you.  He did read to you that it is to the evidence introduced upon this trial and it alone that you are to look for; he did also tell you that a reasonable doubt is not a speculative doubt, it's not a forced doubt, not an imaginary doubt, and that such doubt must not influence your verdict.

And I think the most important phraseology there is a speculative doubt, because in order to buy into this incredible theory not supported by any evidence that the Defendant is putting forth as his defense, you would just have to speculate all over the place.

(Respondent's Exhibit 2D at 587-88).

trial, the prosecutor's comment, even if improper, was not so egregious as to render the trial fundamentally unfair, nor did the comment infect the trial with such unfairness that the resulting conviction amounts to a denial of due process.  See Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) (en banc), cert. denied, 480 U.S. 911 (1987) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair.").  Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

**Ground Two**

Jones contends that the trial court erred in not permitting cross-examination of C.C. about her belief that she was pregnant.[11]  Jones alleges that such questioning

---

[11]  No actual intercourse occurred between C.C. and Jones.  However, sometime after the events with Jones, C.C. thought that she was pregnant.  Prior to trial, the state filed a motion in limine (Respondent's Exhibit 1A at 72-73) seeking to exclude evidence "that C.C., subsequent to the incidents in question, became pregnant and had a baby."  The trial court granted (Respondent's Exhibit 1A at 90) the motion, subject to a proffer outside the presence of the jury.  At trial, Jones requested a proffer (Respondent's Exhibits 2B at 296-97; 2D at 447-52) from C.C., seeking to introduce evidence that C.C. thought she was pregnant.  Jones asserted that such evidence would demonstrate that C.C. "made up"

her story about what happened with Jones "in order to take the heat away from her in the event that she was pregnant, that, to show that [sic] to her grandparents and her family, to hide the fact that she was engaging in sex with a third party."
     The trial court considered the decision in Lewis v. State, 591 So.2d 922 (Fla. 1991).  In Lewis, the defendant was convicted of lewd and lascivious assault upon a child and sexual activity with a child less than 18 years of age while standing in a position of familial or custodial authority.  The Florida supreme court analyzed the general rule of relevancy versus a defendant's Sixth Amendment right of confrontation in the context of the application of the state's rape shield law to exclude evidence of an alleged victim's prior sexual activity with a third person.  The Florida supreme court found error in the application of the rape shield law in Lewis because such application interfered with the defendant's exercise of his confrontation rights.  The court further found that the rape shield law interfered with the development of Lewis's defense that the victim accused the defendant to prevent her mother from discovering that the victim had engaged in sexual activity with a third person.  Lewis v. State, 591 So.2d at 925-26.
     Upon consideration of Lewis and arguments from counsel, the trial court excluded testimony about C.C.'s subsequent pregnancy as follows:

(continued...)

would have allowed the defense to expose C.C.'s "motive to not tell the truth by demonstrating that even though she did not have actual sex with defendant, that she did not tell the truth about the story to her grandparents to gain sympathy and deflect their anger of her being pregnant by [an] ex-boyfriend whom they did not like."  Jones claims that this error denied him his Sixth Amendment right to cross-examine C.C..  The state appellate court rejected this claim on direct appeal (Respondent's Exhibit 3).[12]

---

[11](...continued)
Looking at the Lewis case, it's the application of the general rule of relevancy versus the Defendant's Sixth Amendment right of confrontation.  I think the Sixth Amendment right of confrontation has to be given broad scope.  The language on page 926 of the opinion is:

> Exclusion of a proffered cross-examination with such strong potential to demonstrate the falsity of the alleged victim's accusation cannot be justified by the public policy furthered by the exclusion.  We cannot conceive of a reasonable juror who would not have received a significantly different impression of the victim's credibility had the proffered cross-examination been allowed.  Since the entire case against Lewis was based on his step-daughter's accusations, we cannot say that the error was harmless beyond a reasonable doubt.

All right.  It's a close question in this case.  If the Supreme Court can indulge themselves in conceptualizing what reasonable jurors would think, then surely they would not deny that right to a trial judge who has the opportunity to observe the witnesses.  I cannot imagine that a reasonable juror would be left with a different impression had they thought, had they been exposed to the idea that [C.C.] thought she might have been pregnant, and as a result she fabricated these accusations.

I also feel that this case is based on far more than just [C.C.]'s testimony, and there is that distinction that we've articulated that I think also bears, that also warrants application of the general rule of relevancy in this case, rather than the right of confrontation, but it's a very close issue.  That's the way I'll come down on it.

(Respondent's Exhibit 2D at 451-52).

[12]  Although Jones failed to specifically present this claim as a federal constitutional claim on direct appeal, he relied, in part, on state cases that reference and analyze a defendant's federal constitutional right to cross-examination under the Sixth Amendment and Supreme Court precedent (Respondent's Exhibit 3).  Accordingly, Jones arguably exhausted his federal claim in the state court on direct appeal.  See Baldwin v. Reese, 541 U.S. at 32.  The respondent fails to challenge the exhaustion of this claim.

"[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" Kentucky v. Stincer, 482 U.S. 730, 739 (1987) (quoting Delaware v. Fernsterer, 474 U.S. 15, 20 (1987)).

> A limitation on cross-examination can violate the Sixth Amendment right to confrontation if it prevents the defendant from showing that a witness is biased:  [A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury that facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness."

De Lisi v. Crosby, 402 F.3d 1294, 1300-01 (11th Cir. 2005) (quoting Delaware v. Arsdall, 475 U.S. 673, 680 (1986)).  "Not every limitation on cross-examination violates the Confrontation Clause.  'The Sixth Amendment does not require unlimited inquiry into the potential bias of a witness.  As long as sufficient information is elicited from the witness from which the jury can adequately assess possible motive or bias, the Sixth Amendment is satisfied.'"  De Lisi v. Crosby, 402 F.3d at 1301 (citing United States v. Lankford, 955 F.2d 1549, n. 10 (11th Cir. 1992) (internal citations and quotation marks omitted)).  A trial judge may limit cross-examination, without violating a defendant's Sixth Amendment rights, under the following circumstances:

> (1)   the jury, through the cross-examination permitted, was exposed to facts sufficient for it to draw inferences relating to the reliability of the witness; and

> (2)   the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the witness might have been biased.

United States v. Calle, 822 F.2d 1016, 1020 (11th Cir. 1987).

C.C.'s trial testimony included no reference to having intercourse with Jones. C.C.'s testimony regarding sexual acts with Jones focused only on his fondling her and forcing her to perform oral sex upon him.  The trial court afforded Jones ample opportunity to cross-examine C.C. and the record shows that the trial court did not unreasonably limit or impede Jones's opportunity to cross-examine C.C..  The trial court did not deny Jones the opportunity to question C.C. about her possible bias; rather, the trial court limited Jones's questioning after a thorough consideration of the additional testimony Jones sought to elicit from C.C..  Jones also had the opportunity to question C.C. about inconsistent statements between her trial testimony and her deposition. Jones's cross-examination of C.C. sufficiently exposed relevant facts from which the jury could evaluate C.C.'s credibility.  Jones created a record that C.C.'s testimony was arguably unreliable.  The Sixth Amendment Confrontation Clause "is satisfied where sufficient information is elicited from the witness from which the jury can adequately gauge the witnesses' [sic] credibility."  United States v. Burke, 738 F.2d 1225, 1227 (11th Cir. 1984) (citing Davis v. Alaska, 415 U.S. 308, 315-16 (1974)).

Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts. Ground Two warrants no federal habeas corpus relief.

**Ground Three**

Jones contends that the trial court erred in failing to grant a mistrial after the prosecutor elicited testimony about Jones's detention in violation of a pretrial motion in limine.  Jones asserts that the prosecutor's action violated Jones's Fourteenth Amendment rights to due process and equal protection by removing the presumption of

innocence.  The state appellate court rejected this claim on direct appeal (Respondent's Exhibit 3).[13]

Jones fails to specify in his federal habeas petition what comment by the prosecutor he believes supports this claim.  In his reply (Doc. 17 at 8), however, Jones cites the prosecutor's question to witness Shenna Lee ("Lee"), "Did that conclude your meeting with [Jones] at the jail?," as the basis for this claim.

In his reply, Jones relies upon the decision in <u>Estelle v. Williams</u>, 425 U.S. 501 (1976) to support his claim.  In <u>Estelle</u>, the Supreme Court held that compelling a defendant to attend trial dressed in clearly identifiable prison clothing[14] may violate the defendant's due process right to a fair trial and impair the presumption of innocence. <u>Estelle v. Williams</u>, 425 U.S. at 503-05.  The Supreme Court "emphasized that the prison clothing was a 'constant reminder of the accused's condition,' 'a continuing influence throughout the trial' that presented an 'unacceptable risk' of 'impermissible factors coming into play' and corrupting a juror's judgment." <u>United States v. Villabona-Garnica</u>, 63 F.3d 1051, 1058 (11th Cir. 1995) (<u>quoting</u> <u>Estelle v. Williams</u>, 425 U.S. at 504-05).  <u>See</u> <u>also</u> <u>United States v. Harris</u>, 703 F.2d 508, 510 (11th Cir. 1983) (jury's knowledge of defendant's pretrial incarceration imperils the presumption of innocence by "brand[ing] [the defendant] in the eyes of the jurors with an unmistakable mark of guilt" and "pretrial incarceration, although often the result of [the defendant's]

---

[13]   On direct appeal, Jones relied upon the decision in <u>Estelle v. Williams</u>, 425 U.S. 501 (1976), to support this claim.  Accordingly, Jones exhausted the federal dimension of his claim.  <u>See</u> <u>Baldwin v. Reese</u>, 541 U.S. at 32.

[14]   Jones wore no prison clothing during trial (Doc. 17, p. 9).

inability to raise bail," may lead the jury to speculate that the defendant poses a danger to the community or has a prior criminal record).

The brevity of the reference to Jones's incarceration distinguishes Jones from the defendant in Estelle. Unlike the presentation of a defendant in prison clothing during trial, a continuous reminder of a defendant's condition, the prosecutor's question to Lee was a brief reference to Jones's detention. "[W]hether the jury directly learns of a defendant's incarceration from testimony . . . is of no consequence." United States v. Blasingame, 219 Fed.Appx. 934, 947 (11th Cir. 2007). "The mere utterance" of the words "jail" or "prison" does not automatically entitle a defendant to a new trial. United States v. Blasingame, 219 Fed.Appx. at 947 (citing United States v. Veteto, 701 F.2d 136, 139-40 (11th Cir. 1983) (quoting United States v. Barcenas, 498 F.2d 1110, 1113 (5th Cir.) (1974)).

Even assuming, arguendo, that the prosecutor's question either directly informed the jury of Jones's detention or allowed the jury to infer that fact, the question was not a "constant reminder" and fails to rise to the level of reversible error. See United States v. Villabona-Garnica, 63 F.3d at 1058 (citing United States v. Beasley, 2 F.3d 1551, 1559 (11th Cir. 1993) (witness stated he met defendant in prison in response to defense counsel's question about length of witness and defendant's acquaintance; mistrial properly denied because, inter alia, witness made prison reference in passing and added nothing to government's case), cert. denied, 512 U.S. 1240 (1994); United States v. Veteto, 701 F.2d at 139-40 (in response to government's inquiry about why defendant wanted a machine gun, witness volunteered that defendant was previously imprisoned; brief, unsolicited, and unresponsive answer added nothing to government's case and

trial court properly denied mistrial)).  Jones fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

**Ground Four**

Jones contends that the trial court erred in allowing the prosecution to introduce evidence of Jones's collateral acts.  Specifically, Jones argues that the trial court erroneously allowed the following testimony:

(1)   a question by the prosecutor that "hadn't Kimble told a witness that petitioner had forced her to perform oral sex on [the witness];"

(2)   that petitioner would punish Kimble for not doing as he ordered;

(3)   that there were vibrating "dildos" found at [petitioner's] trailer;

(4)   that petitioner told Kimble that if she was going to testify against him, he would make sure she never made it to the witness stand;

(5)   that petitioner took pornographic pictures of Kimble to blackmail her; and

(6)   telling T.B. that she could make a lot of money being a prostitute.

(Doc. 10 at 4-5).  In his federal habeas petition, Jones claims a denial of his right to due process.  The state appellate court rejected this claim on direct appeal (Respondent's Exhibit 3).[15]

Jones's claim is not cognizable on federal habeas review.  Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that the custody violates the Constitution, laws, or treaties of the United States.

---

[15]   Jones failed to argue a violation of a federal constitutional right to the state court on direct appeal and this claim remains unexhausted.  However, the respondent does not challenge exhaustion.  See supra, n. 6.

28 U.S.C. § 2254(a); <u>Jones v. Goodwin</u>, 982 F.2d 464, 471 (11th Cir. 1993); <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990).  Whether the trial court erroneously permitted the challenged testimony is a matter of state law.  A claim that a state trial court erred in admitting evidence under state laws or evidentiary rules provides no basis for federal habeas corpus relief because the claim presents no federal constitutional question.  28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The limitation on federal habeas review to claims of federal constitutional error applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation.  <u>Branan v. Booth</u>, 861 F.2d 1507, 1508 (11th Cir. 1988); <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976).  Consequently, ground four warrants no relief.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

Jones claims ineffective assistance of counsel, a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995) (<u>en</u> <u>banc</u>) (<u>quoting</u> <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)).  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to <u>Strickland</u>, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by

the Sixth Amendment.  Second, the defendant must show that the
deficient performance prejudiced the defense.  This requires showing that
counsel's errors were so serious as to deprive the defendant of a fair trial,
a trial whose result is reliable.  Strickland, 466 U.S. at 687, 104 S.Ct.
2052.

Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998).

Strickland requires proof of both deficient performance and consequent

prejudice.  Strickland v. Washington, 466 U.S. at 697 ("There is no reason for a court

deciding an ineffective assistance claim . . . to address both components of the inquiry if

the defendant makes an insufficient showing on one.");  Sims v. Singletary, 155 F.3d at

1305 ("When applying Strickland, we are free to dispose of ineffectiveness claims on

either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional

judgment."  Strickland v. Washington, 466 U.S. at 690.  "[A] court deciding an actual

ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct."

Strickland v. Washington, 466 U.S. at 690.  Strickland requires that "in light of all the

circumstances, the identified acts or omissions were outside the wide range of

professionally competent assistance."  Strickland v. Washington, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not

warrant setting aside the judgment of a criminal proceeding if the error had no effect on

the judgment," Jones must demonstrate that counsel's error prejudiced the defense.

Strickland v. Washington, 466 U.S. at 691-92.  To meet this burden, Jones must show

"a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Strickland v. Washington, 466 U.S. at 690-91. Jones cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

White v. Singletary, 972 F.2d 1218, 1220-21 (11th Cir. 1992). Accord Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (en banc) (quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)). See also Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

**Ground Five**[16]

---

[16] Ground Five presents ineffective assistance claims denied by the state court without an evidentiary hearing. Ground Six, supra pp. 54-63, presents ineffective assistance claims denied by the state court after an evidentiary hearing.

Jones contends that the state court abused its discretion by summarily denying, without an evidentiary hearing, twelve grounds of ineffective assistance of trial counsel presented in his first amended state Rule 3.850 motion.[17]  In addition to his claim of state court error, Jones appears to advance these same twelve grounds of ineffective assistance of trial counsel as individual claims for relief in Ground Five.

To the extent Jones challenges the state court's decision to summarily reject the twelve grounds without conducting an evidentiary hearing, Jones asserts no federal constitutional violation.  A federal court is not the appropriate forum to challenge the process afforded in state collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's confinement and not the confinement itself. Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) (a habeas claim that the state trial court violated a petitioner's due process rights because the court failed to conduct an evidentiary hearing and attach to its opinion pertinent portions of the record resolved only issues unrelated to the cause of petitioner's detention and stated no basis for habeas relief).  Consequently, this claim warrants no relief.  Each of the underlying claims of ineffective assistance of trial counsel likewise lacks merit.

---

[17]  Jones filed two Rule 3.850 motions in state court.  In his first Rule 3.850 motion and multiple amendments, Jones presented eighteen claims for relief.  The trial court granted each of Jones's motions to amend this first Rule 3.850 motion and considered the motion and amendments collectively (Respondent's Exhibit 6B at 202).

In evaluating Jones's ineffective assistance claims, the state court correctly

recognized <u>Strickland</u> as the governing standard:

> To be meritorious on an ineffective assistance of counsel claim, a claimant must identify omissions by his attorney that are outside the "broad range of reasonably competent performance under prevailing professional standards." <u>Kennedy v. State</u>, 547 So.2d 912, 913 (Fla. 1989) <u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  After proving this, the claimant must establish that the omission "so affected [sic] the fairness and the reliability of the proceeding that confidence in the outcome is undermined." <u>Kennedy [v. State]</u>, at 913-14.  The Florida Supreme Court has also ruled that when a court is determining an ineffective assistance of counsel claim, it need not make a specific ruling on the performance of the trial counsel when "it is clear that the prejudice component is not satisfied." [<u>Kennedy v. State</u>], at 914.

(Respondent's Exhibit 6B at 203-04).  Consequently, Jones cannot meet the "contrary

to" test in Section 2254(d)(1).  Jones instead must show that the state court

unreasonably applied <u>Strickland</u> or unreasonably determined the facts.

In Ground Five, Jones alleges that trial counsel rendered ineffective assistance

by:

> <u>Claim II</u>:  failing to adequately prepare for non-testimonial display of Jones's scars and "giving misadvi[c]e that interfered with [Jones's] right to give narrative testimony;"

> <u>Claims III and VI</u>:  failing to enter into evidence a false police report by the alleged victim T.B. and failing "to impeach material facts testified to by T.B. at sworn depositions;"

> <u>Claim VII</u>:  failing to properly impeach Detective Rex Hanneford's testimony;

> <u>Claim VIII</u>:  failing to contemporaneously object to prosecutorial misconduct;

> <u>Claim IX</u>:  failing to raise a <u>Giglio</u> violation and failing to argue Jones's motion for mistrial;

> <u>Claim XIII</u>: misadvising Jones about consolidation of trials;

Claim XV:  failing to object to trial court error; and

Claims XVI and XVIII:  failing to object to trial court's erroneous jury instructions

(Doc. 10 at 5-22).  The state court rejected each claim.  To obtain federal habeas relief on his claims, Jones must establish that the state court unreasonably applied Strickland or unreasonably determined the facts in denying Jones's Rule 3.850 motion.  28 U.S.C. § 2254(d).

Claim II[18]

Jones contends that counsel violated Jones's constitutional rights by "failing to properly prepare for a non-testimonial display of . . . three scars that formed a mass of scar tissue at [Jones's] groin area, and by misadvising [Jones] that if narrative testimony was given, the defense would lose double closing."  Jones claims that counsel should have sought a medical doctor to examine Jones's scars and either taken photographs or had the doctor testify to the nature of the scars.  Jones alleges that the photographs or testimony would have shown the jury that "it would have been impossible to pose nude on a bed in simulated sexual pictures, including oral sex, without seeing the scars," and that this evidence would have cast doubt on the credibility of victim T.B..  The state court rejected this claim as follows:

> Claim II
>
> The Defendant alleges ineffective assistance of counsel for failing to prepare for the non-testimonial display of his scar. The Defendant's attorney did cross-examine a witness about the Defendant's scar. He also was able to display the scar to the jury without losing double closing argument or subjecting the Defendant to cross-examination.  Since the

---

[18]  The numbers of each of Jones's sub-claims correspond to the claims as numbered in Jones's first amended Rule 3.850 motion (Respondent's Exhibit 6A at 174-97).

Defendant's scar was actually displayed to the jury, the Court finds that the prejudice component under <u>Strickland</u> has not been met. The Court does not find anything about this claim that undermines confidence in the outcome of this trial and therefore the Defendant is not entitled to relief.

(Respondent's Exhibit 6B at 205) (court's citations to the record omitted).

Jones presents no evidence of entitlement to relief.  <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).   The record supports the state court's denying this claim. Counsel questioned T.B. on cross-examination whether she remembered any scars on Jones's body.  T.B. testified that she did not recall seeing any large scars on Jones (Respondent's Exhibit 2 at 195).  The trial court granted Jones's request[19] to show his scar to the jury without losing his second closing argument[20] (Respondent's Exhibit 2D

---

[19]  Counsel requested the opportunity for Jones to display his scar as follows:

DEFENSE COUNSEL: The issue is, at this point, what Mr. Jones would like me to ask the Court, is after [a witness] testifying that this is a large scar, the other [witnesses] have indicated that they don't recall and they don't remember seeing a large scar.  He would like me to ask if we would be able to give silent testimony to the jury, for me to display his scar and for me not to lose my second closing argument.

. . .

THE COURT: There's actually a number of cases on point and yes, he can, it's not testimonial in nature.  The predicate's been laid to show that the scar existed at the time of the alleged incident, there's testimony that shows the witnesses did not observe such a scar.  So yes, he can display the scar to the jury without losing opening and closing.

(Respondent's Exhibit 2D at 549-50).

[20]  At the time of Jones's trial, Fla. R. Crim. P. 3.250 provided that "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury."

at 549-50).  Jones fails to demonstrate that counsel's performance was outside the

bounds of reasonable professional judgment.  Chandler v. United States, 218 F.3d at

1314 (counsel is not deemed incompetent for performing in a particular way as long as

the approach taken "might be considered sound trial strategy") (quoting Darden v.

Wainwright, 477 U.S. 168 (1986)).  Jones fails to meet his burden of proving that the

state court unreasonably applied controlling Supreme Court precedent or unreasonably

determined the facts.

Claim III

Jones alleges that counsel rendered ineffective assistance by failing to introduce

into evidence T.B.'s falsely reporting a rape unrelated to Jones's actions.  Jones

contends that the report would have exonerated him on all charges involving T.B..

The state court rejected this claims as follows:

Claim III

The Defendant alleges ineffective assistance of counsel for failing to enter
a false police report made by one of the victims. The Defendant's attorney
did, however, attack her credibility and cross-examine the victim about this
false police report.  Since the jury was fully aware of the false police
report, the Court finds that the prejudice component under Strickland has
not been met. The Court does not find that this issue has undermined
confidence in the outcome of this trial and therefore the Defendant is not
entitled to relief.

Furthermore, under Fla. Stat. § 90.803(8), the police report would not
have been admissible even if the Defendant's attorney had attempted to
introduce it into evidence. Police reports are specifically excluded from the
hearsay exception for public records and reports. See Hendreith v. State,
483 So. 2d 768, 769 (Fla. 1st DCA 1986).

(Respondent's Exhibit 6B at 205-06) (court's record citations omitted).

Although the report itself was not entered into evidence, several witnesses, including T.B., testified[21] to the nature and substance of the report and its falsity (Respondent's Exhibit 2B at 342, 372-73; Exhibit 2C at 405-06).  Jones fails to explain how introducing the report itself would have changed the outcome of the trial.  Jones fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.[22]

Claims VI and VII

In claim VI, Jones alleges that counsel rendered ineffective assistance by failing to call an expert witness to testify to the size of Jones's penis.  Jones was charged with

---

[21] T.B. testified on cross-examination as follows:

DEFENSE COUNSEL: . . . Just prior to [various acts with Jones] allegedly occurring, did – you had run away from home and your mother was out looking for you and you reported to the police that you were raped by three black men?


T.B.: Yes.

DEFENSE COUNSEL: Okay.  And you later told them about 20 different versions of that story; do you remember that?

T.B.: Yes.

DEFENSE COUNSEL: And Detective Hill filed a juvenile referral for filing a false police report?

T.B.: Yes.

(Respondent's Exhibit 2A at 179).

[22] Jones states in his federal habeas petition that counsel's ineffectiveness also amounted to a denial of Jones's due process rights when counsel failed to "confront and cross-examine T.B." (Doc. 10 at 7).  Jones failed to assert this federal due process claim in his first amended state Rule 3.850 motion.  Consequently, to the extent Jones attempts to assert a federal due process claim for the first time in his federal habeas petition, the claim remains unexhausted.  See O'Sullivan v. Boerckel, 526 U.S. at 845; Snowden v. Singletary, 135 F.3d at 735; Duncan v. Henry, 513 U.S. at 365.  The respondent asserts no argument related to the exhaustion of this portion of claim III nor specifically waives the exhaustion requirement with respect to this aspect of claim III.  Notwithstanding, the claim lacks merit because the record clearly shows that counsel cross-examined T.B. about the false police report (Respondent's Exhibit 2B at 342, 372-73; Exhibit 2C at 405-06).

three counts of committing a lewd and lascivious act upon T.B. by "having his penis penetrate or have union with the mouth of T.B.."[23]  Jones contends that T.B. stated in her deposition that Jones's penis was "8 inches long and pretty thick."  Jones asserts that he asked counsel to "have a medical doctor testify as to the actual very small size of [Jones's] penis."  The jury acquitted Jones of one of the three charges (Respondent's Exhibit 1A at 136-37).  Jones contends that, had counsel presented evidence of Jones's small penis, the jury would have acquitted him on the other two charges.

In claim VII, Jones contends that counsel rendered ineffective assistance by failing to impeach Detective Rex Hanneford ("Hanneford").  Jones claims that Hanneford's trial testimony was inconsistent with Hanneford's statement to Jones at the police station following Jones's arrest.  Jones alleges that despite Hanneford's discovery of several "vibrators" during a search of Jones's trailer, Hanneford failed to seize these items.  Hanneford testified that the significance of the "vibrators" was unknown at the time of the search.  Jones alleges that while questioning Jones at the police station, Hanneford "admitted on tape that 'the girls' told him that such evidence was in the bottom drawer of a dresser in [Jones's] trailer."  Jones alleges Hanneford spoke to the victims prior to the search.  Accordingly, Hanneford knew the evidentiary significance of the "vibrators" before the search and trial counsel should have used Jones's recorded statement to demonstrate the untruthfulness of Hanneford's trial testimony.

The state court rejected these claims as follows:

---

[23]  The information related to the offenses against T.B. also charged Jones in Count Four with forcing or enticing a child under sixteen to commit a lewd and lascivious or indecent act (Respondent's Exhibit 1E at 949).

<u>Claims VI, VII</u>

The Defendant makes various claims of ineffective assistance of counsel based on his attorney's failure to properly impeach certain witnesses. After reviewing the transcripts, it is apparent that the Defendant's attorney zealously attacked the credibility of the State's witnesses and attempted to impeach them on numerous occasions, including . . . Detective Rex Hanneford . . . .

Other issues raised by the Defendant illustrate that his attorney properly exercised reasonable discretion when dealing with them or deciding not to deal with them. The Court finds that his performance on cross-examination was certainly within the broad range of reasonably competent performance under prevailing professional standards as contemplated in <u>Strickland</u>. Furthermore, the claims raised by the Defendant in his Motion do not establish that his attorney's failure to impeach the witnesses on these issues or raise other issues, affected the fairness and the reliability of the proceeding to the extent that confidence in the outcome is undermined.

(Respondent's Exhibit 6B at 207-08) (court's record citations omitted).

Jones presents no factual or legal support for claim VI. Jones fails to establish that the state court's denying this claim was either contrary to or an unreasonable application of <u>Strickland</u> or resulted in a decision that is based on an unreasonable determination of the facts.

Hanneford's testimony refutes Jones's claim VII. Hanneford testified that after interviewing C.C. (Respondent's Exhibit 2B at 35-60) he obtained a tape-recorded statement from her in which she identified the locations where the events had occurred. Hanneford drove C.C. to those locations for identification purposes, one of which was Jones's trailer (Respondent's Exhibit 2B at 325-27). That same day, Hanneford went to C.C.'s residence to have C.C. make controlled calls[24] to T.B., Jones, and Kimble. After

---

[24] Hanneford testified "[a] controlled call is when I have the victim call the Defendant to see if speaking to that person, to mainly confirm and see if we can get the Defendant to make any

(continued...)

C.C. contacted Jones, Hanneford obtained a search warrant for Jones's trailer.  During the search, Hanneford located the "vibrators" in Jones's bedroom (Respondent's Exhibit 2B at 330).  After the search, Hanneford arrested Jones and then went to Kimble's residence.  T.B. was present at Kimble's residence when Hanneford arrived.  Kimble was arrested, and both she and T.B. were transported to the Palmetto Police Department (Respondent's Exhibit 2B at 337).  Hanneford interviewed T.B..  During the interview, T.B. discussed the "vibrators" (Respondent's Exhibit 2B at 334-35).  Accordingly, because the search was conducted prior to Hanneford speaking with T.B., the evidentiary value of the items was not apparent at the time of the search.  Hanneford testified that he did not return to the trailer to seize these items.[25]

---

[24](...continued)
incriminating statement over the phone" (Respondent's Exhibit 2B at 328).

[25]  Hanneford testified on direct examination as follows:

PROSECUTOR:  And you indicated that you located two, for lack of a better term, vibrators.  Did you take possession of those two vibrators?

HANNEFORD:  No.

PROSECUTOR:  Why not?

HANNEFORD:  Because the search warrant that we served was based on [C.C.]'s statement, and at no time did she mention that she had anything to do with, had anything to do with those two items.

PROSECUTOR:  Did you later learn that these two items had some evidentiary value?

HANNEFORD:  Yes.

PROSECUTOR:  And how did you learn that?

HANNEFORD: Through [T.B.].

PROSECUTOR: And in speaking with her, did she discuss those items?

HANNEFORD: Yes.

(continued...)

The record supports the state court's denying this claim and Jones offers no facts or legal authority to support his allegations.  Jones fails to meet his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.

Claim VIII

Jones alleges that counsel rendered ineffective assistance by failing to contemporaneously object and preserve for appeal numerous instances of prosecutorial misconduct.  Specifically, Jones claims that the prosecutor engaged in misconduct by (1) calling Jones names during closing argument, (2) improperly commenting on Jones's right to remain silent, (3) improperly referring to uncharged crimes, and (4) personally attacking Jones's defense and asserting his personal opinion on Jones's guilt.  Jones also alleges that counsel rendered ineffective assistance by failing to object to allegedly "prejudicial facial and body gestures made by the trial judge at defense counsel that the jury saw and was influenced by."  The state court rejected these claims as follows:

> Claim VIII
>
> The Defendant next raises an ineffective assistance of counsel claim based on his attorney's failure to object to various incidents of alleged

---

[25](...continued)
PROSECUTOR: At that point did you, when you found out about that, go back and attempt to seize those items?

HANNEFORD: No.

PROSECUTOR: Why not?

HANNEFORD: I didn't think we could.   We had already cleared the trailer, and it was maybe an hour or two afterwards that I found this information out.  So I didn't think we could go back.

(Respondent's Exhibit 2B at 334-35).

prosecutorial misconduct. First, the Defendant claims that his attorney should have objected to the prosecutor calling him names during closing argument. After reviewing the transcript, it is apparent that these names were used by the State to advocate its theory of the case. The Court does not find, however, that the name-calling was abusive or was of such a prejudicial nature that it undermined the outcome of the case.

Next, the Defendant claims that his attorney failed to object to comments made by the prosecutor during closing arguments which alluded to the Defendant exercising his right to remain silent. The transcript shows that the Defendant's attorney did, in fact, object when these statements were made by the State. Similarly, the Defendant's attorney also objected to the prosecutor mentioning alleged "wrongful acts" of the Defendant during opening statements.

. . .

The Defendant also alleges that the body and facial movements of the trial judge at one point during the trial were prejudicial to him. The Court finds that this claim is without merit. It is apparent that the judge addressed the behavior of both attorneys throughout the proceedings. The Defendant has failed to show specifically how he was prejudiced based on this perception. In particular, he has not shown prejudice to the extent that the Court would find that the outcome of this trial is unreliable.

In reviewing the issues raised in this claim, the Court finds that the Defendant's attorney properly objected to some of these issues and it was not unreasonable for him to not object to others. Furthermore, none of the issues raised in this claim satisfy the prejudice prong of the <u>Strickland</u> test and therefore, the Defendant is not entitled to post-conviction relief.

(Respondent's Exhibit 6B at 208-09) (court's record citations omitted).  Jones presents

no evidence of entitlement to relief.  <u>See</u> <u>Tejada v. Dugger</u>, 941 F.2d at 1551 (vague,

conclusory, or unsupported allegations cannot support an ineffective assistance of

counsel claim).  The record supports the state court's denial of these claims.

First, Jones alleges that counsel failed to object to the prosecutor calling Jones

names during closing argument.  Although Jones fails to provide a specific citation to

the record, apparently he refers to the prosecutor's reference to Jones as "Mr.

Magnanimous, Mr. Good Guy, Mr. Good Sport, Mr. Joy to the World . . . "

(Respondent's Exhibit 2D at 595).   Considered in context, the prosecutor used this characterization to suggest that Jones's actions were anything but magnanimous, and that he purchased clothing for C.C. to facilitate his sexual relationship with her.[26]   Jones fails to show that, if counsel had objected to the prosecutor's "name calling," the jury would have acquitted him.   Jones fails to meet <u>Strickland</u>'s prejudice requirement.   <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. at 691-92.

Second, Jones contends that counsel failed to object to the prosecutor's allegedly  improper comment on Jones's right to remain silent.[27]   Jones appears to rely upon the following portion of the prosecutor's closing argument to support this claim:

> [Defense counsel] did read the reasonable instruction to you.  He did read to you that it is to the evidence introduced upon this trial and it alone that you are to look for; he did also tell you that a reasonable doubt is not a speculative doubt, it's not a forced doubt, not an imaginary doubt, and that such doubt must not influence your verdict.
>
> And I think the most important phraseology there is a speculative doubt, because in order to buy into this incredible theory not supported by any evidence that the Defendant is putting forth as his defense, you would just have to speculate all over the place.
>
> DEFENSE COUNSEL:  I object, approach the bench?
>
> (The following proceedings ensued at the bench.)
>
> DEFENSE COUNSEL:  I move for a mistrial, he's commenting, he's shifting the burden, coming close to commenting that the Defendant didn't testify, so I would move for a mistrial.
>
> THE COURT:  Motion is denied.

---

[26]  C.C. testified that Kimble and Jones took her to a mall and that Jones purchased clothing for her (Respondent's Exhibit 2B at 224-25).   After shopping, Kimble and Jones took C.C. back to Jones's trailer.  C.C. testified that, upon their return to Jones's trailer, Jones fondled her and forced her to perform oral sex on him (Respondent's Exhibit 2B at 228-36).

[27]  Jones's substantive claim of trial court error regarding the prosecutor's comment was rejected in Ground Two.  <u>See</u> <u>supra</u> discussion at n. 10.

(Respondent's Exhibit 2D at 587-88).  Contrary to Jones's contention, counsel clearly

objected to the prosecutor's statement.

Third, Jones alleges that counsel failed to object to the prosecutor's improper

reference to uncharged crimes.  Jones fails to identify the crimes and fails to cite any

portion of the record to support his claim.   To the extent Jones attempts to present the

same claim he raised in his first amended state Rule 3.850 motion, the claim is based

upon the following portion of the prosecutor's opening statement:

> So this is Peggy Kimble here, and he had her pose for nude,
> sexually-explicit photographs, and after she did so, he told her that if she
> ever crossed him that he would make sure the photographs came into the
> hands of people such as HRS.  And Peggy Kimble will tell you she's a
> single mom and that her child would be taken away from her.  She would
> lose her daughter.

(Respondent's Exhibit 2A at 133-34).

The record refutes Jones's claim.  Although it is true that counsel did not object

to this specific statement, the record clearly shows that counsel objected during the

prosecutor's opening statement to the admission of other uncharged crimes:

> PROSECUTOR:  . . . And so as time went on, more and more time
> together, Peggy Kimble will tell you she fell hopelessly in love with Dale
> Jones.  And as she did so he began to control every detail of her life: What
> she wore, what she did during the day, where she could go, when she
> would go there.  So he had control of her, and if she didn't do what he
> would like, he would punish her.  She will tell you he would punish her
> sexually.
>
> DEFENSE COUNSEL:  Objection.  May we approach the bench?
>
> (The following proceedings ensued at the bench).
>
> DEFENSE COUNSEL:  I'm going to have to move for a mistrial.  Punish
> her sexually, he's going to talk about his sodomizing her and rape.  I've
> had no 10-day notice on similar fact evidence or other crimes or other
> wrongs.  Now, the Judge said, if he could tie it into – Judge Boylston ruled,
> I filed a Motion in Limine, he said if he can tie it in and proffer it to show

she got punished by specific acts involving this, he could use it.  But I've still had no notice, and this is evidence of other crimes and other wrongs. And he's already told them that he sexually punished her, and if he gets any further, I'm moving for a mistrial on that alone.  And then he's basically saying he's raping this woman, and he hasn't been charged with that crime, and I have no 10-day notice prior to trial for other crimes, other wrongs.

(Respondent's Exhibit 2A at 131-32).[28]  Accordingly, the claim that counsel failed to object  lacks merit.

Fourth, Jones alleges that counsel failed to object to the prosecutor's personal attacks on Jones's defense and the prosecutor's assertion of his personal opinion on Jones's guilt.  Jones neither provides a record citation nor legal authority to support this claim.[29]

Jones also contends that counsel rendered ineffective assistance by failing to object to allegedly "prejudicial facial and body gestures made by the trial judge at defense counsel that the jury saw and was influenced by."  Jones neither describes the judge's gestures nor points to any record evidence to support his claim.  Jones presents no evidence of entitlement to relief.  See Hill v. Lockhart, 474 U.S. 52; Tejada v. Dugger, 941 F.2d at 1559.  Jones fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts in denying these claims.

---

[28]  Counsel also objected to the admission of other crimes during Kimble's testimony on direct examination (Respondent's Exhibit 2C at 436-37).

[29]  Jones failed to present this claim his first amended state Rule 3.850 motion. Consequently, the claim is unexhausted.  See  Kelley v. Sec'y for Dep't of Corr., 377 F.3d at 1344; Snowden v. Singletary, 135 F.3d at 735.  The respondent appears to waive the exhaustion requirement.  See supra, n. 6.

Claims IX and XV

In claim IX, Jones alleges that counsel rendered ineffective assistance by failing to object to the prosecutor's eliciting false testimony from Kimble about her plea agreement.  Jones contends that "this untrue evidence was supported by a letter dated 8 March 1996, which was written and signed by the prosecutor before the trial, and was part of the record."   Jones contends that "[a]fter totally confusing matters associated with Kimble's plea agreement, the prosecutor vouched for [Kimble's] testimony, ultimately indicating that she had already been sentenced and advised [the] jurors that she did not have to testify to receive the benefit of the plea . . . ."  Jones claims that counsel failed to specifically object to the prosecutor's eliciting false testimony in violation of Giglio v. United States, 405 U.S. 150 (1972).

In claim XV, Jones contends that his attorney rendered ineffective assistance by failing to object to the trial court's error of prohibiting Jones from establishing "a material record of facts concerning the true penalties faced by co-defendant Peggy Kimble . . . absent her plea agreement."   Jones alleges that the trial court refused to allow counsel to elicit from Kimble sufficient evidence of her knowledge of the penalties she actually faced upon conviction.   Jones alleges that counsel's failure to object to the trial court's error prevented him from raising on appeal a due process claim based on this error.

The state court rejected these claims as follows:

Claims IX, XV

The Defendant alleges ineffective assistance of counsel for his attorney's failure to object and argue a motion for mistrial based on a Giglio violation. More specifically, these claims deal with the plea agreement between a key witness and the State.

> After reviewing the transcript, it is apparent that the Defendant's attorney did object and argue for a mistrial on this exact issue. Also, the Defendant's attorney cross-examined the witness regarding her plea agreement. Thus, the Court finds that the performance by Defendant's counsel was reasonable and not deficient. Furthermore, the Court finds that the Defendant has not satisfied the prejudice prong of the <u>Strickland</u> test. The testimony elicited from the witness by the State regarding her plea agreement was not deceptive to the jury. Therefore, the Defendant is not entitled to relief on this issue.

(Respondent's Exhibit 6B at 209-10) (court's record citations omitted).

A <u>Giglio</u> error occurs when "undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." <u>Ventura v. Attorney Gen., Fla.</u>, 419 F.3d 1269, 1276 (11th Cir. 2005) (<u>citing</u> <u>United States v. Agurs</u>, 427 U.S. 97 (1976)).  "In order to prevail on a <u>Giglio</u> claim, a petitioner must establish that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and that the falsehood was material." <u>Tompkins v. Moore</u>, 193 F.3d 1327, 1339 (11th Cir. 1999).  A falsehood is deemed "material" if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.  <u>United States v. Alzate</u>, 47 F.3d 1103, 1110 (11th Cir. 1995).

On direct examination, the prosecutor questioned Kimble about her plea agreement as follows:

PROSECUTOR:  Did your case ever go to court?

KIMBLE:  Yes, it did.

PROSECUTOR:  Okay.  And do you know what you were charged with?

KIMBLE:  I was originally charged with three counts of lewd and lascivious acts upon a child.

PROSECUTOR:  And did you plead to any of those charges?

KIMBLE:  Yes, I did.

PROSECUTOR:  And what did you plead to?

KIMBLE:  It was just one count of lewd and lascivious act upon a child.

PROSECUTOR:  And what were you sentenced to as a result of your plea?

KIMBLE:  I was sentenced to six months county jail.

DEFENSE COUNSEL:  Objection, may we approach the bench?

THE COURT:  No, you have an objection?

DEFENSE COUNSEL:  She wasn't sentenced.

PROSECUTOR:  Yes, she was.

DEFENSE COUNSEL:  She has not been sentenced.

THE COURT:  She's testifying she's been sentenced.  If you want to cross-examine her about it, go ahead.
DEFENSE COUNSEL:  Fine.

PROSECUTOR:  I guess to bring back that question, were you sentenced?

KIMBLE:  Yes, I signed a plea that I would do six months in the county jail, sex offender counseling.

DEFENSE COUNSEL:  May we approach the bench, your Honor?

THE COURT:  No, sir, do you have an objection?

DEFENSE COUNSEL:  No, I need to have the file brought up to have the Court take judicial notice of her court file.  I didn't anticipate her being --

THE COURT:  We'll have the file brought up.  Go ahead, continue the questioning.

PROSECUTOR:  I'm going to ask the question one more time, Judge, so we can get out the whole answer again.  Were you – was an agreed-upon sentence entered?

KIMBLE:  Yes.

PROSECUTOR:  And what was that sentence?

KIMBLE:  It was six months county jail, five years probation, sex offender counseling, no contact with [T.B.], [C.C.], or their families, and that no other charges would be brought against me in the case; that's all there was.

PROSECUTOR:  Was any term of your plea, did any term of your plea have anything to do with testifying in this case?

KIMBLE:  No, sir, it did not.

PROSECUTOR:  Do you know the Defendant in this case?

DEFENSE COUNSEL:  May we approach the bench?

THE COURT:  No.

DEFENSE COUNSEL:  I'm moving for a mistrial because this is what he supplied me with.

THE COURT:  No, objection overruled.  Go ahead, continue with your questioning.  Quiet.

. . .

PROSECUTOR:  When you pled guilty to the charge, when you pled to the charge, was any mention made about you getting some kind of a better deal if the Defendant was convicted?

KIMBLE:  No, there was not.

PROSECUTOR:  The only agreement was that you testify truthfully; is that correct?

KIMBLE:  That's correct, yes, sir.

PROSECUTOR:  And you told the truth to the best of your ability?

KIMBLE:  Yes, I have, sir.

DEFENSE COUNSEL:  May we approach the bench?

THE COURT:  Yes.

(The following proceedings ensued at the bench.)

DEFENSE COUNSEL:  I need to move for a mistrial . . .

. . .

DEFENSE COUNSEL:  . . . I . . . move for a mistrial because [the prosecutor] just put on a witness that perjured herself.  She just said, he said, he asked her --

THE COURT:  Wait a minute.  Before you go into that, I assume cross-examination is going to be somewhat lengthy?

DEFENSE COUNSEL:  Yes.

THE COURT:  Then we're going to recess, let the jury go, and then I'll listen to argument.

. . .

DEFENSE COUNSEL:  I move for a mistrial, and I also move for sanctions against the State Attorney . . . .  Unless I'm mistaken, he specifically asked a leading question of Miss Kimble at the beginning, specifically said, number one, he had her testify that she's already been sentenced, which is incorrect.  Sentencing has been deferred and he specifically said, part of your plea negotiation was not that you not testify, there was no testimony as part of your plea negotiation.

The last question he just asked her again, leading, was that part of her testimony. Part of your plea deal was that you testify truthfully.  I mean --

PROSECUTOR:  That's --

THE COURT:  Let him finish.

DEFENSE COUNSEL:  I don't know if he's proffering perjured testimony, or whether he's mistaken or – but I think that's very prejudicial to my client.

I mean, he's playing games with this witness.  Plus, the fact that he's also putting on a witness to testify that she in fact was sentenced when she was not sentenced, and he should know that, it's his witness.  The file reflects that sentencing was in fact deferred until she testified truthfully against Dale Jones, that she would be sentenced afterward.  He specifically had her testify.  Obviously, he should have known, unless it was a negligence thing in him putting her on the stand to have her say, oh, I was already sentenced, I was definitely sentenced.  She was not sentenced at any point in time.

THE COURT:  Cross-examine her about it.  Motion is denied.

PROSECUTOR:  Just so the record's clear, it was my understanding that the part of the plea agreement was that she testify truthfully in the case against Dale Jones, and that's, so that's, when I asked her that question I expected her to answer that.

THE COURT:  That's what cross-examination is for.  He can cross-examine her about her plea bargain.  Anything else?

DEFENSE COUNSEL:  That's all I have. . . .

(Respondent's Exhibit 2C at 392-94; 441-42).  Counsel cross-examined Kimble at length about her plea bargain (Respondent's Exhibit 2D at 453-58).  The trial court took judicial notice that Kimble was awaiting sentencing when she testified at Jones's trial (Respondent's Exhibit 2D at 454, 457).

Contrary to Jones's contention in claim IX, counsel clearly objected to the prosecutor's inquiry of Kimble about her plea agreement.  Jones presents no evidence to show that Kimble testified falsely about her plea agreement or that the state knew her testimony was false.  Even if he could so demonstrate, Jones fails to show that Kimble's testimony about her plea agreement had an effect on the verdict, United States v. Alzate, 47 F.3d at 1110, in light of the remainder of Kimble's testimony and the testimony of T.B. and C.C. concerning Jones's sexual encounters with the victims.

In claim XV, Jones contends that his attorney failed to object to the trial court's preventing defense counsel from eliciting Kimble's evidence of knowledge of the penalties she faced upon conviction absent her plea agreement.  Although Jones correctly argues that counsel raised no formal objection on this specific basis, while questioning Kimble on cross-examination, counsel alerted the jury to the possible sentence Kimble faced.  Specifically, counsel elicited the following:

> DEFENSE COUNSEL:  At the time you entered your plea where were [sic] you to receive five years probation and six months county jail, were you aware of the fact that a lewd and lascivious crime is a second degree felony that carries a fifteen year state prison sentence?
>
> PROSECUTOR:  Objection.  May we approach?
>
> THE COURT:  Overruled, overruled.
>
> DEFENSE COUNSEL:  Were you aware that you could have gotten fifteen years state prison had you not made a deal?
>
> KIMBLE:  I was only aware of what the Public Defender, I guess who I was assigned, told me.  That's all I was aware of.
>
> DEFENSE COUNSEL:  Okay.  And did he tell you that a second degree felony, a lewd and lascivious act, carries a penalty of fifteen years state prison per count?
>
> PROSECUTOR:  I'm going to object, Judge, that's the maximum penalty, and I don't feel it's appropriate, that's not what the guidelines in this case held.
>
> THE COURT:  I'm not interested in what the guidelines called for, but she's answered the question and there will be no further reference to it.

(Respondent's Exhibit 2D at 458-59).

Jones claims that the trial court erred by prohibiting counsel from further questioning Kimble about her plea agreement.  Through cross-examination and closing

argument Defense counsel apprised the jury of the potential sentence Kimble faced

absent the plea agreement(Respondent's Exhibit 2D at 570, 574, 578).  Despite the trial

court's limit on counsel's questioning of Kimble, the primary impeaching material was

presented to the jury.  See United States v. Hawkins, 661 F.2d 436, 447-48 (5th Cir.

1981).  Counsel apprised the jury of Kimble's possible bias and motivation for testifying.

Jones's contention that the court "refused to allow counsel to elicit enough [information]

from Kimble for counsel to properly argue to a jury her motive and bias to fabricate her

story" lacks merit.  Jones fails to demonstrate that the trial court's limitation on the

scope of counsel's questioning of Kimble was error.  Jones fails to establish that the

state court's denial of this claim was either contrary to or an unreasonable application of

Strickland or resulted in a decision that is based on an unreasonable determination of

the facts.

Claim XIII

        Jones alleges that counsel rendered ineffective assistance by misadvising Jones

that, if the state court consolidated his two cases, Jones would receive concurrent

sentences.  Jones claims that if he had known counsel's advice was erroneous, "he

would have opted to take a 15 year plea offer instead of going to trial where he received

consecutive sentences of 45 years total."  Jones alleges that counsel advised him that

even if the cases were tried together and Jones was found guilty in both cases, Jones's

maximum sentence exposure was thirty years rather than sixty years if Jones were tried

and found guilty in each case separately.  Jones contends this advice played a "key

part" in his decision to reject a fifteen-year plea offer.  The state court rejected this claim

as follows:

Claim XIII

The Defendant alleges that his attorney was ineffective for advising him to consolidate the two cases brought against him for trial purposes. The Defendant has failed to show that his attorney's decision to try both cases at the same time was a substantial and serious deficiency, measurably below that of competent counsel. See Atkins v. Dugger, 541 So.2d 1165, 1166 (Fla. 1989). The Court finds that this decision made by the Defendant's attorney was within the broad range of reasonably competent performance.

Furthermore, the Defendant has failed to meet the prejudice prong of the Strickland test. Even though the charges were tried together, each of the elements for each of the eight counts, which the Defendant was eventually convicted of, had to be proved to the jury. The Court finds that even if these charges had been tried separately that the outcome at trial would not have been any different. The Defendant is therefore not entitled to relief on this issue.

(Respondent's Exhibit 6B at 211).

Jones fails to demonstrate that moving to consolidate Jones's two cases was anything other than trial strategy.  In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'"  Chandler v. United States, 218 F.3d at 1314.  "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take."  Van Poyck v. Fla. Dept. of Corr., 290 F.3d 1318, 1322 (11th Cir. 2002).  "[J]udicial scrutiny of counsel's performance must be highly deferential."  Chandler v. United States, 218 F.3d at 1314 (quoting Strickland v. Washington, 466 U.S. at 689).  A defendant's disagreements with counsel's tactics or strategies will not support a claim of ineffective assistance of counsel.  A habeas petitioner must overcome a presumption

that the challenged conduct of one's counsel was a matter of strategy.  Strickland v. Washington, 466 U.S. at 689; United States v. Perry, 908 F.2d 56,59 (6th Cir. 1990).  "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Trial counsel must decide which strategic and tactical option to pursue.  See e.g., Dingle v. Sec'y, Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) and Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).  The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim.  Strickland v. Washington, 466 U.S. at 690.

Even assuming that counsel performed deficiently, Jones fails to show that absent  counsel's allegedly erroneous advice, he would have accepted a plea offer. Jones fails to present a sufficient factual basis to support this contention and fails to demonstrate that a plea offer existed.  See Moss v. United States, 323 F.3d 445, 467 (6th Cir. 2003) (petitioner must demonstrate the government's willingness to extend or accept an invitation to plea negotiations).  Even assuming that the government extended a plea offer of fifteen years without a habitual offender enhancement as Jones suggests, he fails to explain why he elected to decline the offer and proceed to trial on

the belief that "even if he lost, his maximum sentence exposure would be 30 years."  In

the absence of an allegation of prejudice, a claim of ineffective assistance of counsel

cannot succeed because the requirements of Strickland remain unsatisfied.  Based on

the bare allegations presented to support this claim, the state court's rejection of this

claim amounts to neither an unreasonable application of Strickland nor an unreasonable

determination of the facts.

Claims XVI and XVIII

In claim XVI, Jones alleges that the trial court committed fundamental error by

giving erroneous jury instructions resulting in Jones's convictions for uncharged crimes.

Jones claims that this error violated his Fourteenth Amendment right to due process.  In

claim XVIII, Jones contends that counsel rendered ineffective assistance by failing to

object to the erroneous instructions.  The state court rejected these claims as follows:

Claim XVI

The Defendant claims that the trial court committed fundamental error
based on the jury instructions that were read prior to deliberations. This
issue was not properly brought in a 3.850 Motion because "issues that
could have been raised on direct appeal, but were not, are not cognizable
through collateral attack." Torres-Arboleda v. Dugger, 636 So. 2d
1321,1323 (Fla. 1994). It is also clear that 3.850 proceedings are not to be
used as a second appeal. See id. The Court finds that the Defendant
should have raised this issue on direct appeal. He is now foreclosed from
raising this issue in post-conviction proceedings.

Claim XVIII

This claim only appears in the Defendant's Amended Memorandum of
Law in Support of Motion for Post-conviction Relief. The Court finds that
this claim should be denied as facially insufficient since there is no factual
basis given to support it. See Pitts v. State, 421 So. 2d 791 (Fla. 1st DCA
1982).

(Respondent's Exhibit 6B at 211, 214).[30]

A state court's rejection of a petitioner's constitutional claim on a state procedural ground generally precludes subsequent federal habeas review of the claim. Coleman v. Thompson, 501 U.S. 722 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). "However, a state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling constitutes an independent and adequate state rule of decision if (1) the last state court rendering a judgment in the case clearly and expressly states that it is relying upon a state procedural rule to resolve the federal claim without reaching the merits of the

---

[30] The state court again rejected these claims in its order addressing Jones's motion for rehearing of the denial of his Rule 3.850 motion:

> Claim XVIII
> This claim appears in the Defendant's Amended Memorandum of Law in Support of Motion for Post-Conviction Relief. The Defendant indicated that the factual basis set forth in Claim XVI should be considered with this allegation of ineffective assistance of counsel. Essentially, the Defendant claims that his counsel should have objected to erroneous jury instructions at the time they were read. The Court has reviewed the transcript and finds no errors in the jury instructions that were read. Therefore, the Court finds no merit in the Defendant's claim of ineffective assistance of counsel on this issue.

> Claim XVI
> The issues raised in this claim were already addressed under claim XVIII above. The Defendant is not entitled to relief.

(Respondent's Exhibit 6B at 382, 384) (court's record citations omitted). In its final order denying Jones's first amended state Rule 3.850 motion following an evidentiary hearing, the state court reiterated its rejection of these claims (Respondent's Exhibit 6F at 849). The state appellate court again affirmed the denial in a per curiam decision without written opinion (Respondent's Exhibit 7).

claim, (2) the state court's decision rests solidly on state law grounds and is not

intertwined with an interpretation of federal law, and (3) the state procedural rule is not

applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair manner".

Judd v. Haley, 250 F.3d at 1313 (citing Card v. Dugger, 911 F.2d 1494 (11th Cir.

1990)); see also Ford v. Georgia, 498 U.S. 411, 424-25 (1991).

The state court expressly applied a state procedural rule and concluded that

claim XVI could and should have been raised on direct appeal.  Consequently, the claim

was procedurally barred and not cognizable on collateral attack.  Torres-Arboleda v.

Dugger, 636 So. 2d 1321,1323 (Fla. 1994).  The state appellate court affirmed the

application of the procedural bar (Respondent's Exhibit 7).  See Harmon v. Barton, 894

F.2d 1268, 1274 (11th Cir. 1990) (state appellate court's per curiam affirmance of the

lower court's ruling explicitly based on procedural default is a clear and express

statement of its reliance on an independent and adequate state law ground barring

federal review).  Florida courts consistently apply the procedural rule that claims that

could and should have been raised on direct appeal are procedurally barred from

collateral review.  See e.g., Bruno v. State, 807 So.2d 55, 63 (Fla. 2001) (holding that

claims of trial court error generally can be raised on direct appeal but not in a Rule

3.850 motion).  Accordingly, Jones's claim XVI is procedurally defaulted.

This default forecloses federal habeas review absent a showing of either cause

and prejudice or a fundamental miscarriage of justice.  Harris v. Reed, 489 U.S. 255,

262 (1989); Smith v. Jones, 256 F.3d at 1138.  Jones fails to demonstrate cause and

prejudice excusing his default.  Jones neither alleges nor shows that the fundamental

miscarriage of justice exception applies.  Because Jones fails to proffer specific facts

showing an exception to the procedural default rule, Hill v. Jones, 81 F.3d 1015 (11th

Cir. 1996), claim XVI is procedurally barred from federal review.

In claim XVIII, Jones alleges that trial counsel rendered ineffective assistance by

failing to object to the erroneous instructions described in claim XVI.  Specifically, Jones

contends:

> The petitioner's 14th Amendment rights were violated when the trial court
> gave erroneous instructions to the jury that resulted in convictions with
> which petitioner was not charged.  Counsel for petitioner failed to protect
> the petitioner's due process rights when he failed to act as effective
> counsel and properly preserve the issue.  This failure violated petitioner's
> 6th Amendment rights to competent counsel and denied him a proper
> appeal.  In case number 95-1693, the petitioner was charged with three
> counts of violating F[la.] S[tat.] 800.04(1) and 1 count of 800.04(2).  In
> case number 95-1675, the petitioner was charged with 4 counts of
> violating F[la.] S[tat.] 800.04(1) and 1 count of violation of 800.04(2); a
> combined total of 7 counts of violation of F[la.] S[tat.] 800.04(1) and 2
> counts 800.04(2).  On five of the F[la.] S[tat.] 800.04(1) counts, both on
> written and oral instructions, the trial court mistakenly gave the instructions
> for violation of F[la.] S[tat.] 800.04(3).  The trial court furthered the error
> when after giving the wrong jury instruction, the court failed to define
> sexual battery, which was required when charging F[la.] S[tat.] 800.04(3).
> The trial court also failed to instruct the jury on the definition of assault as
> to the counts of 800.04(1).

(Doc. 10 at 12).

The informations charged Jones with committing a lewd and lascivious act upon

a child under 16 years of age in violation of Florida Statute, § 800.04(1),[31] and forcing or

---

[31] Section 800.04, Florida Statutes, defined the charged offenses in relevant part as follows:

A person who:
(1) Handles, fondles, or assaults any child under the age of 16 years in a lewd,
lascivious, or indecent manner;
(2) Commits actual or simulated sexual intercourse, deviate sexual intercourse, sexual
bestiality, masturbation, sadomasochistic abuse, actual lewd exhibition of the genitals,

(continued...)

enticing a child under 16 years of age to commit a lewd, lascivious, or indecent act, in

violation of Florida Statutes, § 800.04(2).  The standard jury instruction[32] requires proof

_____

[31](...continued)
or any act or conduct which simulates that sexual battery is being or will be committed upon any child under the age of 16 years or forces or entices the child to commit any such act;
. . .

without committing the crime of sexual battery, commits a felony of the second degree.

Fla. Stat. § 800.04(1), (2) (West 1996).  The information (Respondent's Exhibit 1E at 949-51) related to T.B. charged Jones with three violations of § 800.04(1) (counts I-III) and one violation of § 800.04(2) (count IV).  The amended information (Respondent's Exhibit 1A at 101-03) related to C.C. charged Jones with four violations of § 800.04(1) (counts I-IV) and one violation of § 800.04(2) (count V).

[32]  11.10 LEWD, LASCIVIOUS, INDECENT ASSAULT OR ACT UPON OR IN THE PRESENCE OF CHILD; SEXUAL BATTERY § 800.04, FLA. STAT.

To prove the crime of (crime charged), the State must prove the following two elements beyond a reasonable doubt:

1.      (Victim) was under the age of 16 years.

*Give as applicable*

2. a.    (Defendant)

[made an assault upon (victim) in a lewd, lascivious, or indecent manner].

[handled or fondled (victim) in a lewd, lascivious, or indecent manner].

   b.      (Defendant) committed upon (victim) or forced or enticed (victim) to commit

[actual or simulated sexual intercourse].

[deviate sexual intercourse].

[sexual bestiality].

[masturbation].

[sadomasochistic abuse].

[actual lewd exhibition of the genitals].

[any act or conduct which simulated that sexual battery was being or would be committed on (victim)].

   c.      (Defendant)

(continued...)

of two elements: the victim was under sixteen years of age and the applicable sexual

act.  The trial court's instruction on the first three counts related to T.B. addressed the

oral sex performed on Jones.  The trial court instructed the jury as follows:

> Before you can find the defendant guilty of lewd and lascivious act upon a
> child, the State must prove the following two elements beyond a
> reasonable doubt:
>
> 1. [T.B.] was under the age of sixteen years.
>
> 2.  Dale Jones committed an act upon [T.B.] in which the sexual organ of
> Dale Jones penetrated or had union with the mouth of [T.B.].
>
> Neither the victim's lack of chastity nor the victim's consent is a defense to
> the crime charged.

---

[32](...continued)
[committed an act [upon] [with] (victim) in which the sexual organ of the [(defendant)]
[(victim)] penetrated or had union with the [anus] [vagina] [mouth] of [(victim)]
[(defendant)]].

[committed an act upon (victim) in which the [anus] [vagina] of (victim) was penetrated
by an object].

    d.    (defendant) knowingly committed a lewd and lascivious act in the presence of
(victim).

*Definitions*
*Give in all cases*

    Neither the victim's lack of chastity nor the victim's consent is a defense to the crime
charged.

*Give when § 800.04(1), Fla. Stat. charged*

    As used in regard to this offense the words "lewd," "lascivious," and "indecent" mean
the same thing.  They mean a wicked, lustful, unchaste, licentious, or sensual intent on
the part of the person doing an act.

*Give when assault is charged under § 800.04(1), Fla. Stat.*

    An "assault" is an intentional, unlawful threat by word or act to do violence to the
person of another, coupled with an apparent ability to do so, and doing some act which
created a well-founded fear in such other person that such violence is imminent.

Fla. Std. Jury Instr. 11.10.

> As used in regard to this offense the words "lewd," "lascivious" and "indecent" mean the same thing.  They mean a wicked, lustful, unchaste licentious or sensual intent on the part of the person doing the act.

(Respondent's Exhibit 1A at 113-15).  The trial court gave this same instruction on the third count related to C.C. and the oral sex performed on Jones (Respondent's Exhibit 1A at 119).  The trial court instructed the jury as follows with respect to the fourth count related to C.C.:

> Before you can find the defendant guilty of lewd and lascivious act upon a child, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. [C.C.] was under the age of sixteen years.
>
> 2.  Dale Jones committed an act upon [C.C.] in which the mouth and or tongue of Dale Jones contacted the vaginal area of [C.C.].
>
> Neither the victim's lack of chastity nor the victim's consent is a defense to the crime charged.
>
> As used in regard to this offense the words "lewd," "lascivious" and "indecent" mean the same thing.  They mean a wicked, lustful, unchaste licentious or sensual intent on the part of the person doing the act.

(Respondent's Exhibit 1A at 120).  Both of these instructions contain language from the sexual battery statute:

> "Sexual battery" means oral, anal, or vaginal penetration by, or union with, the sexual organ of another, or the anal or vaginal penetration of another by any other object.

Fla. Stat. § 794.011(h).  The informations did not charge Jones with a violation of the sexual battery statute.

Jones also contends that the instruction on the violations of § 800.04(2)

improperly referred to actual sexual intercourse, an act not charged in Jones's cases.

The challenged instruction reads:

> Before you can find the defendant guilty of Forcing or Enticing a Child
> Under 16 years of Age to Commit a Lewd, Lascivious or Indecent Act, the
> State must prove the following two elements beyond a reasonable doubt:
>
> (1) [T.B.] was under the age of sixteen years.
>
> (2) Dale Jones committed upon [T.B.] or forced or enticed [T.B.] to commit
> actual or simulated sexual intercourse and/or actual lewd exhibition of the
> genitals and/or any act or conduct which simulated that sexual battery was
> being or would be committed on [T.B.].
>
> Neither the victim's lack of chastity nor the victim's consent is a defense to
> the crime charged.
>
> As used in regard to this offense the words "lewd," "lascivious" and
> "indecent" mean the same thing.  They mean a wicked, lustful, unchaste,
> licentious or sensual intent on the part of the person doing an act.

(Respondent's Exhibit 1A at 116).[33]

A petitioner is entitled to federal habeas relief based on an erroneous jury

instruction only if the error "rendered the whole trial so unfair as to amount to a denial of

due process."  Jones v. Dugger, 888 F.2d 1340, 1343 (11th Cir. 1991) (citing Carrizales

v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)).  "The only question . . . is whether

the ailing instruction by itself so infected the entire trial that the resulting conviction

violates due process."  Estelle v. McGuire, 502 U.S. 62, 72 (1991).

Although the jury instructions in Jones's case contained language from a statute

not charged in the informations and assuming, arguendo, that the trial court erred in

---

[33]  The trial court gave the same instruction for the violation of § 800.04(2) in C.C.'s case
(Respondent's Exhibit 1A at 121).

using this language, Jones fails to show that this error infected the entire trial.

Consequently, even if trial counsel performed deficiently in failing to object to the trial

court's instructions, Jones has not demonstrated that, if counsel had performed as

Jones suggest, the jury would have acquitted Jones.  Absent such a showing of

prejudice, Jones's claim XVIII warrants no federal habeas relief.

Claims XI and XII

In each of the two remaining sub-claims of ground five, Jones asserts a claim of

newly discovered evidence unavailable at trial.  In claim XI, Jones alleges a denial of his

right to due process because the state failed to disclose that Kimble received a

favorable sentence in exchange for her testimony against Jones.  Specifically, Jones

contends that because the jury did not know of Kimble's eligibility for work-release, that

the trial court withheld adjudication in her case pending her testimony against Jones,

and that the court waived or reduced Kimble's attorney fees and probation costs, the

jury could not have truly determined Kimble's credibility.  The state court rejected this

claim as follows:

> Claim XI
>
> In this claim, the Defendant alleges that he was denied due process based
> on the State's failure to disclose the details of a "favorable" sentence given
> to a key witness in exchange for her testimony.  For her role in these
> incidents, the witness was placed on five years probation and sentenced
> to six months in the county jail with credit for time served with extended
> limits of confinement for work-release.
>
> In his motion, the Defendant relies on Moore v. State, 623 So.2d 608 (Fla.
> 4th DCA 1993).  In that case, the state introduced the written plea
> agreements made with the testifying co-defendants.  See id.  The
> agreements indicated that the state would recommend the minimum
> mandatory sentence in exchange for the witnesses' testimony, but the

state actually ended up asking for less.  See id.  The Court found that the defendant was entitled to relief because the jury was misled as to the facts affecting the credibility of the witness.  See id.

At trial, the state questioned the witness about her plea agreement.  She answered that she was sentenced to six months in the county jail and five years of probation.  In addition, over a year before the trial, the witness signed an Acknowledgment and Waiver of Rights form, which detailed her sentence.  Other than the fact that the witness received extended limits of confinement for work-release, the sentence was as she testified to at trial.  The Court finds that any differences between the actual sentence and the sentence as it was disclosed to the jury were insignificant or immaterial.  The Defendant has not alleged, nor does the record reflect, that the State misrepresented the substance of the plea agreement to the jury.  The Court thus finds that the credibility of the witness was in no way affected and there is no probability that this information would have resulted in an acquittal on retrial.

(Respondent's Exhibit 6B at 212-13) (court's record citations omitted).

As discussed in claim IX above, the prosecutor questioned Kimble about her plea agreement.  (Respondent's Exhibit 2C at 392-94; 441-42).  Defense counsel cross-examined Kimble at length about the agreement (Respondent's Exhibit 2D at 453-58).  The jury knew that Kimble's plea agreement required her to testify truthfully at Jones's trial.  Jones presents no evidence demonstrating that if the jury had known additional details he cites, the jury would have acquitted him as he suggests.  This claim warrants no relief.

In claim XII, Jones alleges entitlement to a new trial because he discovered at his sentencing hearing, through the testimony of C.C.'s mother, that Kimble had "harassed" C.C. and that Kimble "made [C.C. and her mother] move out of their home."  Jones contends that this information would have contradicted the characterization of Kimble at

trial as a "helpless, afraid and meek victim."  The state court rejected this claim as

follows:

> Claim XII
>
> The Defendant claims that he is entitled to a new trial based on a
> comment by one of the victim's [sic] mothers during the Defendant's
> sentencing hearing.  The Defendant alleges that the comment showed
> that a key witness for the State, Peggy Kimble, was not the "meek, afraid,
> naive person" that she appeared to be when she testified against him.
> The victim's mother stated that her daughter had to "quit her job because
> of Peggy" and because "they would not leave her alone."  She also
> indicated that they had moved and changed their phone numbers.
>
> After reviewing the transcripts, the Court finds that this comment does not
> meet the required standard for newly discovered evidence.  The comment
> relied on by the Defendant is taken out of context, but even when
> considered in a light most favorable to the Defendant, there is no
> reasonable probability that it would produce an acquittal at retrial.
> Furthermore, this comment is clearly not newly discovered evidence since
> a review of the trial transcript shows that the Defendant's attorney
> cross-examined the victim about Peggy Kimble harassing her at work and
> school.

(Respondent's Exhibit 6B at 213-14) (court's record citations omitted).

Whether Jones satisfies Florida's rules governing a claim of newly discovered

evidence is a matter of state law not cognizable on federal habeas review.  28 U.S.C.

§ 2254(a); Estelle v. McGuire, 502 U.S. at 67 ("In conducting habeas review, a federal

court is limited to deciding whether a conviction violated the Constitution, laws, or

treaties of the United States").  To the extent that claim XII might allege a federal due

process violation, the claim warrants no relief.  The limitation on federal habeas review

to claims of federal constitutional error applies with equal force when a petition, which

actually involves state law issues, is couched in terms of a Fourteenth Amendment due

process violation.  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988); Willeford v.

Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976).

Accordingly, because Jones's claims of ineffective assistance of counsel and trial

court error lack merit, Jones cannot demonstrate that the state court erred in denying

claims II, III, VI, VII, VIII, IX, XI, XII, XIII, XV, XVI and XVIII of his state Rule 3.850

motion.  Ground five of Jones's federal habeas petition warrants no relief.

**Ground Six**

Jones contends that the state court erred in denying four grounds in his first

amended state Rule 3.850 motion after an evidentiary hearing.[34]  Jones appears to

advance four claims of ineffective assistance of trial counsel in addition to his claim of

trial court error.  Specifically, Jones alleges trial counsel rendered ineffective assistance

by:

> Claim I:  interfering with Jones's right to testify;
>
> Claim V:  failing to adequately investigate and present available witnesses at trial;
>
> Claim X:  objecting to the state's attempt to play a portion of the controlled phone calls so that the defense would not lose double closing, when the tapes played in their entirety would have impeached T.B.'s testimony and created reasonable doubt of Jones's guilt; and
>
> Claim XIV:  failing to investigate or present impeachment evidence against state witnesses Kimble and Lee

(Doc. 10 at 13-17).  The record supports the state court's denial of each of these claims.

---

[34]  The trial court denied Jones's first amended state Rule 3.850 motion in its entirety (Respondent's Exhibit 6B at 202-15).  Jones filed a motion for rehearing.  The trial court ordered (Respondent's Exhibit 6B at 376-85) an evidentiary hearing on four of Jones's claims of ineffective assistance of counsel.  Following the evidentiary hearing, the trial court denied relief as to all claims presented in the first amended state Rule 3.850 motion (Respondent's Exhibit 6F at 848-59).

To the extent that Jones challenges the state court's actions at the evidentiary hearing, Jones asserts no federal constitutional violation.  A federal court is not the appropriate forum to challenge the process afforded in state collateral proceedings because the challenge attacks a proceeding collateral to the prisoner's confinement and not the confinement itself.  Quince v. Crosby, 360 F.3d at 1261-62.  This challenge warrants no relief.  Jones's four claims of ineffective assistance of trial counsel likewise lack merit.

Claim I

Jones alleges that counsel interfered with Jones's right to testify by advising Jones that:  (1) the defense would lose double closing argument; (2) the jury would learn the details of Jones's prior convictions; and (3) if Jones elected to testify, counsel would withdraw from the case.  Jones contends that "he could prove through his testimony that Kimble was in the process of building a prostitution service and was forcing alleged victims T.B. and C.C. to participate, and [his testimony] could set [a] predicate for all other witnesses and evidence that would support his contention and prove his innocence."  Following an evidentiary hearing, the state court rejected this claim as follows:

> In claims I, V, X, and XIV, the Defendant alleged ineffective assistance of counsel as grounds for post-conviction relief.  In order to be meritorious on an ineffective assistance of counsel claim, a claimant must identify omissions by his attorney that are outside the "broad range of reasonably competent performance under prevailing professional standards." Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989) citing Strickland v. Washington, 466 U.S. 668 (1984).  After proving this, the claimant must establish that the omission "so affected [sic] the fairness and the reliability of the proceeding that confidence in the outcome is undermined." Kennedy at 913-14.  The Florida Supreme Court has also ruled that when

a court is determining an ineffective assistance of counsel claim, it need not make a specific ruling on the performance of the [sic] trial counsel when "it is clear that the prejudice component is not satisfied."  Id. at 914.

Claim I

In this claim, Defendant alleged that his trial counsel, Harmon Karasick, was ineffective for not allowing him to testify on his own behalf.  The Defendant claimed that his attorney expressed concerns about losing the right to a double closing argument, as well as the State questioning the Defendant about his prior convictions if he were to testify.  The Defendant also claimed that his attorney threatened to withdraw from the case if he insisted on testifying.

At the evidentiary hearing, Mr. Karasick testified that he never misadvised the Defendant that the reason he did not want him to take the stand had anything to do with losing double closing argument.  Additionally, Mr. Karasick explained that he was reluctant to put the Defendant on the stand due to his numerous felony convictions.  He disputed, however, the Defendant's contention that he told the Defendant that the State would be able to illicit details of his past crimes.  In his Motion, the Defendant claims that "his will was overborne" by the alleged misinformation from his trial counsel, but he contradicts himself when claiming that even during his trial, he insisted that he be permitted to take the stand.

Clearly, the Defendant and his trial attorney have a different recollection of some of their pre-trial strategy discussions; however, they both acknowledge that "heated" disagreements took place between them regarding this issue.  In fact, Mr. Karasick admitted that he told the Defendant that he would withdraw from the case if he insisted on testifying.  The Defendant argues that the circumstances in his case are identical to those in Tyler v. State, 793 So.2d 137, 142 (Fla. 2d DCA 2001), where the Court held that threatening to withdraw satisfies the performance prong of an ineffective assistance of counsel claim.  However, as noted in the Order denying post-conviction relief, the Defendant indicated during his trial that he understood he had a right to testify, but that he had decided to waive this right.  The Defendant also stated that he was satisfied with the advice his attorney had given him on that issue.  The trial court also asked the Defendant if he was making the decision not to testify of his own free will.  The Defendant answered that the decision was his own and that no one was threatening or forcing him to choose not to testify.  The trial court even went a step further and asked the Defendant if he was "exercising his right to remain silent with full knowledge of what" he had the right to do.  The Defendant replied, "Yes,

sir, I don't think I have anything to say."  In <u>Tyler</u>, the Court specifically noted that the colloquy conducted by the trial court did not show whether the defendant in that case had been threatened or coerced in any way, thus forcing him to waive his right to testify.  The Court finds this is a significant difference between <u>Tyler</u> and the present case.  Regardless, even if the Court were to find that the performance of the Defendant's trial counsel to have been deficient, the Defendant must also show how he was prejudiced by the deficient performance in order to be entitled to relief.

At the evidentiary hearing, Mr. Karasick explained the strategy behind his decision not to let the Defendant testify.  During the evidentiary hearing, Mr. Karasick stated that he felt the taped statement the Defendant gave to the police, which was played by the State during the trial, was "excellent." He "covered all the bases, his demeanor was great, he was calm, he came off sounding well, he admitted to knowing them (the victims), he denied the allegations, he explained away why they might be lying against him without actually telling him."

After reading his Motion and hearing the Defendant testify at the evidentiary hearing about what he would have testified to at trial, the Court finds that any testimony that the Defendant could have provided was already before the jury based on the State playing the tape of his statement to the police.  In addition, at the evidentiary hearing, the Defendant acknowledged that during his taped statement to the police, he specifically denied all of the allegations against him.  Otherwise, anything else that the Defendant argues he could have testified about was already before the jury or it would have been found to be inadmissible, precluded by the trial court's order on the State's motion in limine, or relevant only to collateral matters.  Further, if the Defendant had taken the stand, it undoubtedly would have come out that the Defendant had 18 prior felony convictions; a fact that the Court believes would have been damaging to the Defendant's case.  Based on these circumstances, the Court finds that the Defendant has failed to show how his trial counsel's decision to not have him testify affected the fairness and reliability of the outcome of his trial; therefore, the Court finds that the Defendant is not entitled to relief on this issue.

(Respondent's Exhibit 6F at 850-53) (court's record citations omitted).

    The record and the testimony adduced at the evidentiary hearing supports the

state court's denial of this claim.  Clearly Jones and counsel discussed whether Jones

should testify at trial.  The state court specifically questioned Jones about his decision

not to testify and Jones stated that his decision was not the result of any threat or

coercion.  Jones stated that he understood that he had the right to testify and that the

decision not to testify was Jones's own.  The state court's factual finding is entitled to a

presumption of correctness and Jones fails to rebut this presumption by clear and

convincing evidence.  See 28 U. S. C. § 2254(e)(1).  Accordingly, this claim warrants no

relief.

Claims V and XIV

Jones alleges in claim V that counsel failed to investigate, depose and call

witnesses[35] as Jones requested.  Jones asserts that these witnesses would have

supported his defense and counsel's failure to call the witnesses deprived Jones of his

right to a fair trial.  Jones alleges in claim XIV that counsel failed to investigate or

present impeachment evidence against Kimble and Lee.  Following an evidentiary

hearing, the state court rejected these claims as follows:

Claims V, XIV (in part)[36]

In his Motion, the Defendant asked the Court to consider both of these
claims together.  Claim V detailed allegations that the Defendant
requested his counsel to present certain witnesses to testify on his behalf
and to rebut the testimony of the State's witnesses.  Claim XIV also more
broadly alleged that the Defendant's trial counsel failed to put on
witnesses who could rebut the testimony or attack the credibility of the
State's witnesses.

---

[35]  Jones fails to name the witnesses in his federal habeas petition and his petition is
interpreted to mean the witnesses named in his first amended state Rule 3.850 motion.

[36]  The trial court granted an evidentiary hearing on claim XIV "only as it pertained to the
ineffective assistance of counsel claim regarding the alleged failure to call and/or investigate
prospective witnesses" (Respondent's Exhibit 6F at 1-2).

In <u>Highsmith v. State</u>, 617 So.2d 825, 826 (Fla. 1st DCA 1993), the Court stated that a facially sufficient post-conviction motion alleging ineffective assistance of counsel for failure to investigate or call a witness must include the following:  (1) the identity of the prospective witness; (2) the substance of the witness's testimony; and (3) an explanation as to how the omission of this evidence prejudiced the outcome at trial.

At the evidentiary hearing, the Defendant called several witnesses who he alleges had they testified during his trial, their testimony would have created reasonable doubt as to his guilt.  The witnesses called by the Defendant at the evidentiary hearing included most of the witnesses listed in Claim V.

JAN FRIDAY

According to his Motion for Post-Conviction Relief, the Defendant wanted his attorney to call Jan Friday for three reasons:  (1) to show that Friday was involved; (2) to show that Friday's clothing and physical description[37] matched that of the alleged offender; and (3) to support the fact that the co-defendant, Peggy Kimble, was starting up a prostitution business that would involve the minor victims.  At the evidentiary hearing, Mr. Friday testified that he knew the Defendant and some of the State's witnesses from AA meetings.  He also testified that he had a one-time sexual relationship with the co-defendant, Peggy Kimble.  Mr. Friday also testified about the clothing he typically wore to work.

While Mr. Friday admittedly knew some of the parties involved in this case from AA meetings, no evidence was presented to indicate that he "was in the middle of this saga" as the Defendant alleged.  When asked, Mr. Friday clearly had no idea who one of the victims was or even what this case was about.  Further, the evidence in this case would not support the Defendant's purported theory of mistaken identity.  The evidence clearly shows that the victims knew the Defendant well and would not have confused him with Mr. Friday based on the similarities in their physical appearances.  Also, any evidence regarding Peggy Kimble's involvement in the prostitution business or her sexual relationship with Mr. Friday would [not][38] have been admissible due to the Order on the State's Motion in Limine.  Therefore, the Court finds that the Defendant has failed to show

---

[37]  Jan Friday is a male.

[38]  It appears, from the context and conclusion given, that the state court inadvertently omitted the word "not" from this sentence.

how the omission of the testimony provided by Mr. Friday prejudiced the outcome of his trial.

## JERRY BECKETT

The Defendant wanted his attorney to call Jerry Beckett, who he claims would have testified that he was at the Defendant's trailer, at the same time one of the victims was allegedly there, and that he did not see the victim, an exchange of money, or anything else of consequence. While Mr. Beckett did not recall seeing any teenage girls at the Defendant's trailer he also could not say with any certainty that the victims were not there because he was not in every room of the trailer. This was also the reasoning used by Harmon Karasick, the Defendant's trial attorney, in reaching his decision not to call Mr. Beckett. The Court finds that the Defendant has failed to show how his attorney's failure to call Mr. Beckett as a witness prejudiced the outcome at trial.

## CARL WACHSMAN

The Defendant claimed that if his attorney had called Carl Wachsman that his testimony would have shown that the co-defendant, Peggy Kimble, was the "real culprit and offender" in this case. In his Motion for Post-Conviction Relief, the Defendant lists four specific things that he claims Mr. Wachsman would have testified about: (1) Kimble did not give the camera to Wachsman, he found it in her vehicle; (2) Kimble hid one of the victims at Wachsman's home while she was in Texas; (3) the victim stole four liquor bottles from Wachsman's home; [and] (4) Wachsman drove Kimble to and from the airport while she was in Texas.

During the evidentiary hearing, Mr. Wachsman did testify to some of the things listed above and other evidence was admitted through a deposition he gave previously. The Court carefully considered this testimony and finds that it only would have been relevant to impeach the co-defendant, Peggy Kimble, on a few collateral issues. The Defendant has failed to show how the testimony of Mr. Wachsman would have led to a different outcome at trial; therefore, the Court finds it was not ineffective assistance of counsel for the Defendant's trial attorney to not call him as a witness.

## KATHY BUSH; JOHN & LARRY

The Defendant did not call any of these witnesses at the evidentiary hearing. While there was some indication that one of the three has since passed away, there was no reference to any efforts to contact the others for this hearing. In addition, the Defendant has failed to properly identify

some of these prospective witnesses in his Motion, and/or assert that they were available to testify at trial.  Regardless, the Court finds that the substance of the testimony that the Defendant proposes these witnesses would have provided goes to only collateral matters and the omission of this testimony did not prejudice the outcome at trial.

<u>JAIL PERSONNEL:  DWAYNE CUMMINGS</u>

The Defendant called this witness at the evidentiary hearing to testify that it would have been impossible for the Defendant to spit on Shenna Lee when she visited him in jail in 1995.  While the witness did not recall anything about the specific incident, he did testify that an occurrence of physical contact between an inmate and a visitor was very unlikely.  The Defendant argues that he wanted this evidence introduced at trial to impeach the testimony of Shenna Lee who stated that the Defendant spit on h[er] at the jail.  The Court, however, finds that it was reasonable for the Defendant's trial attorney to not call any jail personnel on this collateral matter.  Further, the omission of this testimony did not prejudice the outcome at trial; therefore, the Defendant is not entitled to relief.

In summary, any testimony that these potential witnesses could have offered was already before the jury or it would have been inadmissible, precluded by the trial court's order on the State's motion in limine, relevant only to collateral matters or otherwise reasonably not presented by the Defendant's attorney.  The Defendant has failed to show how the omission of the testimony of any of these witnesses prejudiced the outcome of his trial; therefore the Court finds it was not ineffective assistance of counsel for the defendant's trial attorney to not call any of these witnesses or spend his efforts investigating them.  Thus, the Defendant is not entitled to relief on these claims.

(Respondent's Exhibit 6F at 853-58) (court's record citations omitted).

The record supports the state court's denying these claims.  Jones presents no evidence of entitlement to relief.  See <u>Hill v. Lockhart</u>, 474 U.S. 52; <u>Tejada v. Dugger</u>, 941 F.2d at 1559 (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

Claim X

       Jones contends that counsel rendered ineffective assistance in failing to have the

tapes of the controlled phone calls played in their entirety at trial.  Jones argues the

tapes would have impeached T.B.'s trial testimony, demonstrated that T.B. testified

falsely, shown that Jones was not the person with whom T.B. spoke during the call,

demonstrated that Kimble controlled T.B. and C.C., and proved that Jones committed

no crime upon C.C..  Jones asserts that this failure by counsel deprived Jones of a fair

trial.  Following an evidentiary hearing, the state court rejected this claim as follows:

> Claim X
>
> This claim concerned the decision made by the Defendant's attorney to
> object to the introduction into evidence of some taped controlled phone
> calls.  The Defendant claims that some of the information in the phone
> calls was favorable to his defense.  The Defendant's attorney argued, in
> fact, that he would not object to the tape being played in its entirety;
> however, the State then decided not to introduce the tapes of the
> controlled phone calls into evidence.
>
> The Court has reviewed and [was] provided a copy of the transcript of the
> controlled phone calls, which was attached as an exhibit to the
> Defendant's Motion for Post-Conviction Relief.  During the evidentiary
> hearing, the tapes of the controlled phone calls were introduced into
> evidence and played for the Court.  After hearing the tapes in their
> entirety, it is apparent that the tapes contained a considerable amount of
> material that would have been detrimental to the Defendant's case.  The
> Court finds it was a reasonable strategic decision for Mr. Karasick to not
> introduce the tapes of the controlled phone calls into evidence and also
> proper for him to object to the State's attempt to have the tapes admitted
> in order to keep them out.  The Court finds the Defendant has failed to
> show deficient performance by his trial counsel or prejudice with regard to
> this issue; therefore he is not entitled to relief based on ineffective
> assistance of counsel.

(Respondent's Exhibit 6F at 858-59) (court's record citations omitted).

Jones fails to demonstrate that counsel's performance fell outside the bounds of reasonable professional judgment.  Chandler v. United States, 218 F.3d at 1314.  Jones fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts.

Accordingly, because Jones's claims of ineffective assistance of counsel lack merit, Jones cannot demonstrate that the trial court erred in denying claims I, V, X, and XIV of his state Rule 3.850 motion.  Ground six of Jones's federal habeas petition warrants no relief.

**Ground Seven**

Jones presents two claims in ground seven.  First, Jones alleges that counsel labored under an actual conflict of interest but failed to alert Jones of the conflict. Second, Jones alleges that counsel rendered ineffective assistance by failing to call Margaret Busch as a witness at trial.  Jones presented these claims in his second state Rule 3.850 motion.  The state court denied these claims as follows:

> In his current Motion for Post-Conviction Relief, the Defendant raises two claims that he feels entitle him to relief, both based on newly discovered evidence pursuant to Fla. R. Crim. P. 3.850(b)(1).  In order to prevail on a post-conviction claim based on newly discovered evidence, a defendant must show three things.  First, that the facts were unknown by the trial court, the defendant or his counsel at the time of the trial.  See Scott v. Dugger, 604 So.2d 465, 468 (Fla. 1992).  Second, that the defendant or his counsel could not have known the facts by the use of diligence.  See id.  And finally, that the evidence is of such a nature that it would probably produce an acquittal on retrial. See id.  See also Williamson v. Dugger, 651 So.2d 84, 89 (Fla. 1994).
>
> Claim One
>
> In Claim One, the Defendant alleges that his trial counsel was "laboring under an actual conflict of interests" and "did nothing to alert the defendant

to his rights concerning the conflict or his proper options concerning such conflicts." In particular, the Defendant acknowledges that he and his attorney had several arguments regarding trial strategy, but he was not aware that his attorney made telephone calls to the Florida Bar regarding "the conflict" until he heard his former attorney testify about it at the evidentiary hearing held on his previously filed post-conviction motion.

The Court finds that the Defendant has failed to show that he is entitled to relief based on newly discovered evidence under this claim. First, the facts detailed in this claim were obviously known by the Defendant's attorney at the time of trial. In addition, the Defendant has failed to show that this evidence is of such a nature that it would probably produce an acquittal on retrial. The only thing alleged by the Defendant is that this conflict adversely affected his attorney's performance; however, this issue was raised in the previous post-conviction motion and the Court denied relief as to all claims of ineffective assistance of counsel.

Claim Two

In Claim Two, the Defendant argues that his defense counsel was ineffective for failing to investigate and call his mother, Margaret E. Busch, as a defense witness. Ms. Busch testified at the evidentiary hearing held on the previously filed Motion for Post-Conviction Relief. The Defendant alleges that the content of his mother's testimony regarding a statement made to her by a witness for the State qualifies as "newly discovered evidence" for the purposes of his current post-conviction motion.

The Court also finds that the Defendant has failed to show he is entitled to relief based on newly discovered evidence under this claim. First, it appears that the Defendant is attempting to raise a claim of ineffective assistance of counsel, styled as a newly discovered evidence claim, because he would otherwise be time-barred from raising it. See Fla. R. Crim. P. 3850(b). Regardless, based on the testimony of Ms. Busch, the Defendant's mother, it appears that the information she had was or could have been known by the Defendant's attorney at the time of trial. The Defendant has also failed to show that he could not have known this information at the time of trial with the use of some diligence.

In addition, the Defendant has failed to show that this evidence is of such a nature that it would probably produce an acquittal on retrial. Whether the testimony of Ms. Busch would have led to an acquittal is highly speculative. In fact, the Defendant has failed to allege that this evidence would have led to an acquittal, only that it could have discredited one of the State's witnesses. Further, it is highly unlikely that Ms. Busch's

> testimony regarding what the State's witness said to her would have been admissible at trial since that statement appears to be hearsay; therefore, the Defendant is not entitled to relief on this issue.

(Respondent's Exhibit 8) (court's record citations omitted).

In his first claim of ground seven, Jones fails to assert the violation of any federal constitutional right due to counsel allegedly laboring under an actual conflict of interest. To the extent that this claim, liberally construed, asserts ineffective assistance of counsel, the claim lacks merit.  "A criminal defendant is entitled to conflict-free representation."  Cuyler v. Sullivan, 446 U.S. 335, 346 (1980).  "A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely."  United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993) (citing Cuyler v. Sullivan, 446 U.S. at 335; United States v. Petz, 764 F.2d 1390, 1392 (11th Cir. 1985)).  An "actual conflict" of interest occurs when a lawyer has "inconsistent interests."  Freund v. Butterworth, 165 F.3d 839, 859 (11th Cir. 1999) (citing Smith v. White, 815 F.2d 1401, 1405 (11th Cir. 1987)).  To prove that an actual conflict hindered counsel's performance, Jones "must make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest an actual impairment of Jones's interests.  Freund v. Butterworth, 165 F.3d at 859 (citing Smith v. White, 815 F.2d at 1404).  Jones makes no such showing.

Jones fails to demonstrate that an actual conflict of interest existed.  "If a defendant is unable to show an 'actual conflict,' then he is not entitled to relief from his conviction because a 'speculative or merely hypothetical conflict of interest does not

yield a Sixth Amendment violation.'" <u>United States v. Novaton</u>, 271 F.3d 968, 1011 (11th Cir. 2001) (<u>quoting</u> <u>Burden v. Zant</u>, 24 F.3d 1298, 1305 (11th Cir. 1994)).  Alternatively, even assuming that an actual conflict existed, Jones has not shown that the conflict "adversely affected" counsel's performance.

> To prove adverse effect, a [defendant] must satisfy three elements. First, he must point to some plausible alternative defense strategy or tactic [that] might have been pursued. Second, he must demonstrate that the alternative strategy or tactic was reasonable under the facts. Because prejudice is presumed, the [defendant] need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used, rather he only need prove that the alternative possessed sufficient substance to be a viable alternative. Finally, he must show some link between the actual conflict and the decision to forgo the alternative strategy of defense. In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

<u>Freund v. Butterworth</u>, 165 F.3d at 860.  Jones fails to satisfy these three elements. Consequently, this claim warrants no federal habeas relief.

    In the second claim of ground seven, Jones alleges that counsel rendered ineffective assistance by failing to call Margaret Busch ("Busch") as a witness at trial. Under Florida law, "the failure to call witnesses can constitute ineffective assistance of counsel if the witness may have been able to cast doubt on the defendant's guilt, and the defendant states in his [post-conviction] motion the witnesses' names and the substance of their testimony, and explains how the omission prejudiced the outcome of the trial."  <u>Marrow v. State</u>, 715 So.2d 1075 (Fla. 1st DCA 1998).  "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."  <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)

(citations omitted).  Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it."  Dingle v. Sec'y, Dep't of Corr., 480 F.3d at 1099.  The reasonableness of counsel's challenged conduct on the facts of the case viewed as of the time of counsel's conduct decides an ineffectiveness claim.  Strickland v. Washington, 466 U.S. at 690.

Jones speculatively asserts that Busch would have testified to threats made by Kimble and Lee.[39]  Even if counsel had called Busch as a witness, no evidence shows that she would have testified as Jones hypothesizes.  Jones fails to demonstrate that counsel's performance was outside the bounds of reasonable professional judgment.  Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (internal citation omitted) ("[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision");  Chandler v. United States, 218 F.3d at 1314.  Jones fails to support his contention that Busch's testimony would have resulted in his acquittal.  Consequently, Jones fails to establish that the state court's denying this claim was either contrary to or an unreasonable application of Strickland or resulted in a decision that is based on an unreasonable determination of the facts.

---

[39] Jones states that Busch would have testified "that state's witness Shenna Lee (who alleged at trial that petitioner confessed to her at a jail house visit) and co-defendant Peggy Kimble (after being released on bail), had come to [Busch's] home and told her that if petitioner had anything to do with that 'nigger baby,' that they would see to it that petitioner would get life" (Doc. 10 at 18).

Accordingly, Jones's amended petition for the writ of habeas corpus (Doc. 10) is

**DENIED**.  The clerk shall enter a judgment against Jones and close this action.

ORDERED in Tampa, Florida, on March 31, 2008.

_____
**STEVEN D. MERRYDAY**
**UNITED STATES DISTRICT JUDGE**